**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF EASTERN DISTRICT OF VIRGINIA,**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| M.M.M., G.S., M.O.K., B.S.S, and H.K.,<br><br>Plaintiffs,<br><br>– *versus* –<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>and<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>Defendants. | **Case No.** |

**COMPLAINT**

## INTRODUCTION

1.      Plaintiffs are Afghan nationals who provided critical support to the U.S. government in its decades-long war against the Taliban. Thousands of Afghan nationals risked their own lives and the lives of their families to assist the U.S government. The risks they face have only increased since the United States withdrew from Afghanistan in 2021. Afghan nationals who aided the United States and their families live with a target on their backs—threats of death and violence have forced many into hiding or left them searching for a way to safely leave Afghanistan.

2.      Congress created the Afghan Special Immigrant Visa (SIV) program in 2009 to protect Plaintiffs and others like them—specifically, Afghan nationals who supported American efforts, as well as their spouses and their unmarried children under the age of 21.

3.       Plaintiff parents M.M.M., G.S., M.O.K., and B.S.S. and the father of Plaintiff H.K. applied to the SIV program years ago, but the government took years to confirm their eligibility. Since they applied, the world around Plaintiffs has changed: the U.S. military withdrew from Afghanistan, and the Taliban hunted down and killed many former U.S. allies. Plaintiff H.K.'s father was among those murdered by the Taliban.[1]

4.      While Plaintiff parents and H.K.'s father waited for a decision in their cases, their children—who were as young as 14 when their parents applied to the program—turned 21.

---

[1] When H.K.'s father applied to the SIV program in 2019, Plaintiff H.K. was listed on the application form as a beneficiary. H.K.'s father was murdered by the Taliban after the U.S. government decided that he was eligible for SIV status, but before the government approved his SIV application. After his father's death, H.K. sought to proceed with an SIV application based on his father's qualifying employment on behalf of the U.S. government.

5.     Congress anticipated this possibility and enacted the Child Status Protection Act (CSPA) to prevent children from aging out of eligibility for immigration status due to the U.S. government's delays. CSPA effectively freezes a child's age on the date their parent applies for immigration status.

6.     In Plaintiffs' cases, however, the Defendant agencies did not freeze the ages of H.K. and the other Plaintiffs' children when the Plaintiff parents and H.K.'s father first applied to the SIV program. Instead, Defendants froze the children's ages at a later stage in the application process.

7.     The result: Defendants decided that H.K. and the other Plaintiffs' children had become too old to travel to the United States to live in safety with their parents. Plaintiff parents and H.K.'s mother were left with the impossible choice of putting their own lives in danger or leaving their children behind.

8.     The government does not have to penalize Afghan families for its own processing delays. Since July 2022, Defendants have frozen children's ages on the date their parent applied to the SIV program. Nonetheless, Defendants continue to penalize Plaintiffs and their families who filed SIV applications years ago—even though SIV applicants who applied to the program later are allowed to bring their children with them to safety.

9.     Defendants' determination that Plaintiff parents' children and H.K. had become too old to be included in their parents' SIV applications was arbitrary and capricious and deprives Plaintiffs M.O.K. and B.S.S. of their right to equal protection. Plaintiffs seek an order vacating Defendants' determinations and remanding the cases to Defendant U.S. Department of State (State Department) for reconsideration.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). The Court has additional remedial authority under 28 U.S.C. §§ 2201-02 (Declaratory Judgment Act).

11.     Venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391(e)(1) because Plaintiff M.O.K. is a resident of the District. Each Defendant is an agency of the United States. No real property is involved in this action.

12.     Venue is proper in the Alexandria Division under Local Civil Rule 3(B) because Plaintiff M.O.K. is domiciled in Loudoun County, Virginia.

## THE PARTIES

13.     Plaintiff M.M.M. is an Afghan national. When he applied to the SIV program in 2017, his two oldest children were 16 and 17 years old. More than four years later, Defendants determined that M.M.M. was eligible for SIV status—but by this time, his two oldest children were over the age of 21. Thereafter, the State Department notified M.M.M. that these children had become too old to be included in his SIV application. M.M.M. remains in danger in Afghanistan because he is unwilling to leave his children behind.

14.     Plaintiff G.S. is an Afghan national. When he applied to the SIV program in 2016, his three oldest children were 16, 17, and 20. More than four years later, Defendants determined that G.S. was eligible for SIV status—but by this time, his three oldest children were over the age of 21. Thereafter, the State Department notified G.S. that these children had become too old to be included in his SIV application. G.S. remains in danger in Afghanistan because he is unwilling to leave his three oldest children behind.

15.     Plaintiff M.O.K. is a lawful permanent resident who immigrated to the United States in 2023 through the SIV program, and made his home in Aldie, Virginia. M.O.K. applied to the SIV program in 2014, when his daughter was 14 years old. More than seven years later, Defendants determined that M.O.K. was eligible for SIV status—but by this time, his daughter was over 21. Thereafter, the State Department notified M.O.K. that his daughter had become too old to be included in his SIV application, and M.O.K was unable to bring his daughter with him to the United States.

16.     Plaintiff B.S.S. is a lawful permanent resident who immigrated to the United States in 2023 through the SIV program. He lives in Raleigh, North Carolina with his wife and younger children. B.S.S. applied to the SIV program in or around 2019, when all of his children were under 21. Nearly two years later, Defendants determined that B.S.S. was eligible for SIV status. By this time, however, his oldest son was over 21. Thereafter, the State Department notified B.S.S. that his oldest son had become too old to be included in B.S.S.'s SIV application—and B.S.S. could not bring his oldest son with him to safety. B.S.S.'s oldest son remains in danger in Afghanistan.

17.     Plaintiff H.K. is an Afghan national who was 18 years old when his father applied to the SIV program in 2019. In early 2022, while waiting for a decision in his SIV case, H.K.'s father was murdered by the Taliban. Around the same time, Defendants determined that H.K.'s father was eligible for SIV status—but by this time, H.K. was over the age of 21. Defendants permitted H.K.'s mother and sister to continue SIV processing after the father's death, but informed H.K. that he was too old to proceed with an SIV application based on his father's employment on behalf of the U.S. government. While H.K.'s mother and sister received SIVs and were able to travel to safety in the United States, H.K. remains in danger in Afghanistan.

4

18.     Defendant State Department is the executive agency of the United States that is responsible for administering the Afghan SIV program. Afghan Allies Protection Act (AAPA), § 602(b)(1), *codified at* 8 U.S.C. § 1101 note. The State Department determines whether the child of an SIV applicant located outside the United States is eligible for a visa as a derivative or surviving child.

19.     Defendant U.S. Department of Homeland Security (DHS) is an executive agency of the United States that supports and consults with the State Department to implement the Afghan SIV program. AAPA § 602(b)(1). Before July 2022, DHS, through its component agency U.S. Citizenship and Immigration Services (USCIS), was directly responsible for adjudicating part of the Afghan SIV application.

## FACTUAL BACKGROUND

### The Afghan Allies Protection Act

20.     In response to the 9/11 terror attacks, the United States invaded Afghanistan in 2001. Since then, Afghan nationals who assisted with U.S. operations in Afghanistan have been targeted, attacked, and kidnapped by the Taliban and other anti-American forces. Hundreds have been killed for their support of the U.S. government's mission.

21.     The children of Afghan nationals who assisted the United States have been likewise targeted to intimidate or punish their parents for their work.

22.     Even years after the U.S. government's departure from Afghanistan, the Afghan nationals who aided the United States and their families continue to experience harassment, threats, torture, abuse, and death at the hands of the Taliban or other anti-American groups.

23.     Congress did not intend for the U.S. government's Afghan allies to live in fear of persecution and death. In 2009, Congress passed the Afghan Allies Protection Act, Pub. L. 111-8,

123 Stat. 807 (2009) (AAPA), which created the SIV program for Afghan nationals who worked with the U.S. government to enable them to relocate to safety in the United States, along with their families.

24.     The SIV program provides an immigration pathway for Afghan nationals who were employed by or on behalf of the U.S. government for a certain period of time and "provided faithful and valuable service" to the U.S. government, and who "ha[ve] experienced or [are] experiencing an ongoing serious threat as a consequence of [that] employment." AAPA § 602(b)(2)(A).

25.     AAPA extends the same protections to the spouses of qualifying Afghan nationals and to their children; they are derivatives of the qualifying applicants. Derivative applicants can accompany their qualifying family member to the United States or join them later. *Id.* § 602(b)(2)(B).

26.     To qualify as a derivative, an applicant's child must be under 21 and unmarried. 8 U.S.C. § 1101(b)(1).

27.     Some Afghans who qualify for SIVs are murdered or die from other causes while they wait for Defendants' decisions on their applications. Their surviving spouse and/or children can proceed with an SIV application based on the deceased applicant's qualifying employment on behalf of the U.S. government. AAPA § 602(b)(2)(C).

28.     To minimize the time that applicants and their families must wait in dangerous conditions, Congress has directed that SIV applications must be processed in no more than nine months. AAPA § 602(b)(4)(A); *see Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-01388 (TSC), 2019 WL 4575565, at *3, 11 (D.D.C. Sept. 20, 2019) (years-long delays in adjudicating SIV applications are unlawful), 643. F. Supp. 3d 148, 157 (D.D.C. 2022), *aff'd*, 103 F.4th 807 (D.C. Cir. 2024).

29.     Nonetheless, the Plaintiff parents and H.K.'s father waited as long as seven years at just the first step of the SIV application process.

30.     Defendants' delays have had serious consequences for SIV applicants like Plaintiffs. Plaintiffs and their families spent years living in danger. And by the time Defendants completed the first stage of SIV processing, Plaintiffs' children and H.K. were over 21—and Defendants said they had become too old to travel to safety.

## The SIV Application Process

31.     Until July 20, 2022, the SIV application process for applicants outside the United States consisted of four primary steps:

i.      First, applicants applied for **Chief of Mission (COM)** approval by submitting **Form DS-157** and evidence of qualifying employment to the National Visa Center within the State Department. COM determined whether applicants met the statutory requirements for SIV status by confirming that: (1) the applicant was an Afghan national; (2) the applicant was employed by or on behalf of the U.S. government for the requisite time period; (3) the applicant provided faithful and valuable service to the U.S. government; and (4) the applicant had experienced or was experiencing an ongoing serious threat.

ii.     Second, applicants submitted a petition for special immigrant status, known as **Form I-360**, to USCIS. At this stage, USCIS again confirmed that applicants met the statutory eligibility requirements for the SIV program.

iii.    Third, applicants had to apply for and be granted visas.

a.  After USCIS approved Form I-360, the applicant submitted a formal visa application **(Form DS-260)** on behalf of themselves and each

qualifying derivative. Applicants could only submit Form DS-260 after the National Visa Center created individualized forms for each family member in the Consular Electronic Application Center and granted the applicant access.

b. The applicant and qualifying derivatives were subsequently interviewed by a consular officer at a U.S. Embassy or Consulate. After the interview, applicants underwent mandatory background and security checks.

iv. Fourth, a consular officer approved the visa applications, enabling the applicant and derivatives to obtain visas and travel to the United States.

32. At the time that Plaintiffs applied for and received COM approval, SIV applicants were required to go through each of these four processing steps.

33. In July 2022, Defendants changed the process. Defendants combined the first and second steps of the process, eliminating USCIS's redundant confirmation of eligibility. As of July 20, 2022, the SIV application process consists of three primary steps:

i. First, applicants apply for COM approval by submitting Form DS-157, and the State Department confirms that applicants are eligible for the program. The process is identical to Step 1 of the pre-July 2022 application process. *See supra* ¶ 31(i).

ii. Second, the applicants apply for and are granted visas. This process is identical to Step 3 of the pre-July 2022 application process. *See supra* ¶ 31(iii).

iii.  Third, applicants and derivatives receive visas, which allow them to immigrate to the United States. This process is identical to Step 4 of the pre-July 2022 application process. *See supra* ¶ 31(iv).

34.  Put another way, applicants outside the United States who received COM approval after July 20, 2022, as well as applicants who applied to the SIV program after July 20, 2022, are no longer required to submit Form I-360.[2]

35.  Instead, the State Department now treats Form DS-157—the form that applicants submit at the outset of the application process—as a combined COM application and petition for SIV status.

36.  In implementing this policy change, the State Department did not substantively change Form DS-157 or seek to collect additional information from applicants at the COM application stage. The changes are largely cosmetic: for instance, they changed the title to say that Form DS-157 is a "Petition for Special Immigrant Classification."[3]

37.  The current version of Form DS-157 is equivalent in sum and substance to the Forms DS-157 that the Plaintiff parents and H.K.'s father submitted to initiate their application processes.

---

[2] *See* U.S. Dep't of State, *What You Need to Know About the Afghan Special Immigrant Visa (SIV) Petition Change* (July 20, 2022), https://travel.state.gov/content/dam/visas/SIVs/SIV%20Petition%20Fact%20Sheet_JULY202022.pdf.

[3] The only new questions on the updated form pertained to: (1) the date of birth and date of marriage of the applicant's spouse; and (2) whether the applicant's deceased parent or spouse had ever applied for COM approval. *Compare* Form DS-157, *available at* https://eforms.state.gov/Forms/ds157.PDF (last visited June 26, 2024), *with* Form DS-157 (July 14,2022), *available at* https://web.archive.org/web/20220714021629/https://eforms.state.gov/Forms/ds157.PDF.

38.     The remaining steps in the SIV application process are the same as they were prior to July 20, 2022.

### The Child Status Protection Act (CSPA)

39.     CSPA was designed to ensure that children who turn 21 after their parents apply for immigration status do not become ineligible to immigrate with their parents because of the U.S. government's processing delays.

40.     CSPA sets out a method for calculating children's ages to determine their eligibility for immigration statuses, including SIV status. 8 U.S.C. §§ 1153(h), 1154(a)(1)(G); AAPA § 602(b)(1). A child's adjusted age under CSPA—or the age that the government uses to determine their eligibility for immigration status—is equivalent to their age on the date that an immigrant visa becomes available to their parent, minus the number of days the "applicable petition" for immigration status was pending. 8 U.S.C. § 1153(h)(1). A visa is "available" when there is no wait list for the limited number of visas permitted by law.

41.     Because visas are immediately available to SIV applicants,[4] CSPA functionally "freezes" a child's age on the date their parent files a petition for special immigrant status.

42.     Before July 20, 2022, Defendants treated Form I-360 (the second stage of the Afghan SIV application process) as the "applicable petition" used to calculate the adjusted age of Afghan SIV children.

43.     In other words, the government did not freeze the ages of Afghan SIV applicants' children until after the applicant received COM approval—a process that itself often takes years.

---

[4]   *See* H. Res. 2822, 118 Cong. 2d session (Mar. 2024), *available* at https://docs.house.gov/billsthisweek/20240318/WDI39597.PDF.

44.     As such, Plaintiff parents' children, H.K., and others like them aged out of eligibility to accompany their parents to safety because of the government's processing delays.

45.     This unfortunate result was not inevitable: Defendants now avoid such age-outs because they eliminated redundancies in the first and second steps of SIV processing.

46.     Specifically, after July 2022, Defendants began to treat Form DS-157 as the "applicable petition" to calculate the age of Afghan SIV children. *See* 9 FAM 502.1-1(D)(4)(a)(6) (last visited June 26, 2024).

47.     This means that a child who is under 21 when their parent applies to the SIV program will not age out of eligibility to accompany their parent to safety, regardless of how long Defendants take to process their parent's petition.

### Defendants' Arbitrary Age-Out Policy

48.     Defendants' application of CSPA in Plaintiffs' cases undermines CSPA's protections and purpose, unlawfully penalizing Plaintiffs for Defendants' delays.

49.     Plaintiff parents and H.K.'s father applied to the SIV program by submitting Form DS-157, received COM approval, and filed Form I-360 before July 20, 2022.

50.     It was not until Plaintiff parents and H.K.'s mother filed Form I-360 that Defendants froze their children's ages.

51.     Because Plaintiff parents' children were over 21 when their parents filed Form I-360, Defendants determined that the children had become too old to be included in the SIV applications as derivatives.

52.     Similarly, Defendants determined that H.K. was not eligible to proceed with an SIV application based on his deceased father's employment, because H.K. was over 21 years old when Form I-360 was submitted.

53. Ironically, if Plaintiffs had waited *longer* to submit Form I-360 to USCIS—until after July 2022, Defendants would now permit them to bring their children to the United States, because after July 2022, Form I-360 was no longer required and Defendants froze the ages of applicants' children on the date the SIV application was filed using Form DS-157.

54. Put another way, SIV applicants who applied later with older children can bring their children to United States because their children's ages are frozen at the beginning of the application process—but Plaintiffs are unable to bring their children because their children's ages were frozen in the middle of the application process.

**Plaintiffs' SIV Applications**

*Plaintiff M.M.M.*

55. Plaintiff M.M.M. applied for COM approval by submitting Form DS-157 in December 2017, after militants threatened to harm him and his family because of his work for a U.S. government contractor.

56. When M.M.M. submitted his COM application, his oldest son was 16 years old, and his oldest daughter was 17 years old.

57. After more than three years, the State Department erroneously denied M.M.M.'s application. M.M.M. timely appealed the denial.

58. M.M.M. received COM approval on June 28, 2022, four and a half years after he applied.

59. By this time, his oldest son and daughter were both over 21 years old.

60. In an effort to quickly move his case forward, M.M.M. submitted Form I-360 to USCIS within days of receiving COM approval, on July 3, 2022.

61.     Less than a month later, Defendants announced that SIV applicants were no longer required to submit Form I-360.

62.     If, instead of promptly submitting Form I-360, M.M.M. had done nothing for three weeks, he would not have been required to submit Form I-360—and Defendants would consider his children's ages frozen at 16 and 17.

63.     In January 2023, M.M.M. contacted the National Visa Center within the State Department to request visa applications (Form DS-260) for his oldest son and daughter.

64.     The National Visa Center did not permit M.M.M. to submit Form DS-260 for his oldest son and daughter because these children were over 21 when M.M.M. submitted Form I-360 to USCIS.

65.     The State Department coordinates evacuation flights for certain eligible Afghans— including SIV applicants with pending visa applications and their immediate families—so that these applicants can complete visa processing in a third country. To qualify for an evacuation flight, a child must be included in their parent's SIV application as an eligible derivative.[5]

66.     Earlier this year, the State Department reached out with an offer to evacuate M.M.M., his wife, and their younger children.

67.     The State Department refused to evacuate M.M.M.'s two oldest children because the Department claimed these children had become too old to be included in M.M.M.'s SIV application as derivatives.

68.     M.M.M. declined the evacuation offer because he was not willing to leave his two oldest children behind in Afghanistan.

---

[5] *See* U.S. Dep't of State, *Afghanistan Inquiries*, https://www.state.gov/afghanistan-inquiries/ (last visited June 26, 2024).

69.     In March 2024, M.M.M. requested that Defendants reconsider their determination that his two oldest children had become too old to be included in his SIV application as derivatives.

70.     Defendants refused to reconsider their determination. In an email dated May 15, 2024, the State Department reiterated that M.M.M.'s two oldest children "[did not] appear" on his SIV application because the National Visa Center had "preliminarily determined" that they were "not . . . children for immigration purposes and thus not eligible as derivative applicants."

71.     Meanwhile, M.M.M. fears that he will be abducted and killed if the Taliban learn he is still in Afghanistan. He is afraid to work and avoids going outside as much as possible.

72.     M.M.M. also worries about his children's safety. Defendants have forced M.M.M. to choose between leaving his older children behind or keeping the whole family at risk in Afghanistan.

*Plaintiff G.S.*

73.     Plaintiff G.S. worked for a U.S.-affiliated nonprofit organization in Afghanistan. He and his family were threatened because of his work on behalf of the U.S. government.

74.     When G.S. submitted a COM application by filing Form DS-157 in September 2016, he had four children under the age of 21. His three oldest children were 16, 17, and 20 years old.

75.     G.S. received COM approval in March 2021.

76.     By this time, his three oldest children were all over the age of 21.

77.     Later that month, G.S. submitted Form I-360 to USCIS.

78.     A few weeks later, USCIS approved his Form I-360.

79.     In May and June 2021, G.S. submitted visa applications (Form DS-260) for himself, his wife, and all four of his children.

80.     In August 2021, G.S. received an interview notice that listed all of his children as eligible applicants and set an interview date in September 2021.

81.     Shortly afterward, the Taliban took over Afghanistan and the United States closed its embassy in Kabul. As a result, G.S. and his family were unable to complete this visa interview in September 2021.

82.     In April 2022, the State Department contacted G.S. offering to evacuate him and his family so that the family could complete the final stages of SIV processing, including the visa interview, in a third country. G.S. promptly supplied the family's information and waited for news.

83.     A few months later, however, the State Department informed G.S. that his three oldest children had become too old to be included in his SIV application, and that these children were not eligible for evacuation. This was the first time G.S. learned that his three oldest children were no longer included as derivatives on his SIV application.

84.     G.S. declined the evacuation offer because he was unwilling to leave his children behind. At the time, he believed the State Department had erroneously excluded his children, and he hoped that the family would eventually be allowed to travel together.

85.     The State Department has since contacted G.S. on several occasions regarding evacuation. Although G.S. explained that his children were as young as 16 when he sought COM approval, the State Department insists that his three oldest children are not eligible for derivative SIV status or evacuation because they were over 21 when G.S. submitted Form I-360 to USCIS.

86.     In March 2024, G.S. requested that Defendants reconsider their determination that his three oldest children had become too old to be included in his SIV application as derivatives.

87.     Defendants refused to reconsider their determination. As a result, G.S. must either leave his three oldest children behind, or keep his whole family in danger in Afghanistan.

*Plaintiff M.O.K.*

88.   Plaintiff M.O.K. worked with the U.S. government for years to provide key supplies. This work put his life and family in danger, and he decided to apply to the SIV program.

89.   M.O.K. applied for COM approval by submitting Form DS-157 in September 2014, when his daughter was 14 years old.

90.   In his application, M.O.K. stated that he feared for his daughter's safety and that this was one of his reasons for seeking SIV status.

91.   M.O.K received COM approval in March 2022, more than seven years after he applied.

92.   By this time, his daughter was over 21 years old.

93.   M.O.K. submitted Form I-360 to USCIS in April 2022, and his petition was approved approximately six weeks later.

94.   In November 2022, M.O.K. submitted a visa application (Form DS-260) for his daughter.

95.   M.O.K. subsequently received notice that his family—including his daughter—had been scheduled for a visa interview in February 2023 at the U.S. Embassy in Ankara, Turkey.

96.   M.O.K. traveled to Turkey with his family, incurring significant expenses, so that they could complete SIV processing.

97.   A few days before his interview, the U.S. Embassy in Ankara informed M.O.K. by email that his daughter was ineligible to be interviewed for a visa because she was over 21.

98.   M.O.K. and his wife subsequently received SIVs and made the difficult decision to travel to the U.S. without their daughter.

99.     Meanwhile, M.O.K.'s daughter returned to Afghanistan, encountering danger and hardship as a young, single woman under the Taliban's regime.

100.    In March 2024, M.O.K. requested that Defendants reconsider their determination that his daughter had become too old to be included in his SIV application as a derivative.

101.    Defendants refused to reconsider their earlier determination. In an email dated May 9, 2024, the State Department explained that M.O.K.'s daughter did not qualify as a child because she was over 21 when her father submitted Form I-360 to USCIS.

*Plaintiff B.S.S.*

102.    Plaintiff B.S.S. applied to the SIV program after the Taliban threatened to kill him and his children because of his work in support of the U.S. government.

103.    When B.S.S applied for COM approval by submitting Form DS-157 in or around October 2019, his oldest son was under the age of 21.

104.    In August 2021, nearly two years after he applied, B.S.S. received COM approval.

105.    By this time, his oldest son was over 21 years old.

106.    B.S.S. submitted Form I-360 to USCIS in October 2021.

107.    After his I-360 was approved, the National Visa Center permitted B.S.S. to submit visa applications (Form DS-260) for himself, his wife, and his younger children. B.S.S. was not permitted to submit Form DS-260 for his oldest son.

108.    For months thereafter, B.S.S. and his family remained in Taliban-controlled Afghanistan, awaiting a decision in his pending SIV case.

109.    In or around April 2023, the State Department contacted B.S.S. to inform him that he and his family had been scheduled for an evacuation flight out of Afghanistan. To B.S.S.'s surprise and dismay, his oldest son was not included on the evacuation list.

110.    B.S.S. promptly contacted the National Visa Center to request that his son be evacuated with the rest of his family.

111.    The National Visa Center responded by email, informing B.S.S. that his oldest son had become too old to be included in his SIV application because his son was over 21 when B.S.S. submitted Form I-360 to USCIS.

112.    Over the next six months, B.S.S. delayed evacuating because he did not want to leave his oldest son behind.

113.    By October 2023, the risks to B.S.S. and his family were too great, and he felt that he could not delay evacuation any longer. For the sake of his wife and younger children, he made the difficult choice to leave Afghanistan without his oldest son.

114.    B.S.S. subsequently completed SIV processing in Qatar and immigrated to the U.S. with his wife and younger children.

115.    In March 2024, B.S.S. requested that Defendants reconsider their determination that his son had become too old to be included in his SIV application as a derivative.

116.    Defendants refused to reconsider their earlier determination. Because the State Department did not permit B.S.S. to submit Form DS-260 for his son, the Department claimed to have "no record" that his oldest son "applied for or was refused a visa."

117.    Meanwhile, B.S.S.'s oldest son lives in hiding in Afghanistan; he believes that the Taliban are still searching for him.

*Plaintiff H.K.*

118.    When H.K. was growing up, his father worked in support of the U.S. government's efforts in Afghanistan. The family was known to be affiliated with the United States and received death threats.

119.    In April 2019, H.K.'s father applied for COM approval by submitting Form DS-157, listing H.K. and his sister as eligible minor children.

120.    At the time his father applied for COM approval, H.K. was 18 years old.

121.    Two years later, the State Department erroneously denied H.K.'s father's COM application, and he timely appealed.

122.    In February 2022, the State Department approved H.K.'s father's COM application.

123.    Around the same time, the Taliban murdered H.K.'s father.

124.    At the time H.K.'s father's application received COM approval, H.K. had recently turned 21.

125.    After his father's death, H.K. was threatened by the Taliban, who started asking questions about H.K.'s own involvement in his father's work.

126.    Shortly thereafter, H.K. fled to Pakistan with his mother and younger sister, where the family continued to seek SIV status based on his father's approved COM application.

127.    In March 2022, H.K.'s mother submitted an I-360 petition, which listed H.K. and his sister as beneficiaries. USCIS approved this petition.

128.    Although the National Visa Center invited H.K.'s mother and sister to submit visa applications (Form DS-260) in or around March 2022, it did not permit H.K to do so.

129.    H.K. subsequently accompanied his mother and sister to their visa interview as an interpreter. When H.K. asked State Department officers why he could not apply or be interviewed for a visa, he was told that he was too old to proceed with an SIV application based on his deceased father's employment on behalf of the U.S. government.

130.    At the time that State Department officers made these representations to H.K., the Foreign Affairs Manual did not specify how consular officers should determine whether an

applicant qualified as a surviving child, such that they could proceed with an SIV application based on their deceased parent's work for the United States.[6]

131.    Subsequently, the State Department updated its Foreign Affairs Manual to clarify that CSPA does not apply to surviving children proceeding with an SIV application based on their deceased parent's work. Instead, a surviving child qualifies for SIV status if they were under 21 years old on the date their parent filed a COM application or, if no such application was filed, on the date of the qualifying's parent's death. 9 FAM 502.1-1(D)(4)(a)(6); 9 FAM 502.5-12(C)(a)(5)(d) (last visited June 26, 2024).

132.    Pursuant to the State Department's policy, H.K. is eligible to proceed with an SIV application based on his father's work on behalf of the United States.

133.    Nonetheless, the State Department refused to allow H.K. to submit a visa application based on his father's approved COM application, even though his younger sister was permitted to do so.

134.    In March 2024, H.K. requested that Defendants reconsider their determination that he could not proceed with an SIV application based on his father's work for the United States.

135.    Defendants refused to reconsider their earlier determination. The State Department did not permit H.K. to submit Form DS-260, and it claimed via email that it had "no record" that H.K. "applied for or was refused a visa."

136.    After his mother and sister received SIVs and traveled to the United States, H.K. was deported from Pakistan and forced to return to Afghanistan.

137.    Because he is known to the Taliban, H.K. lives in hiding in Afghanistan.

---

[6] *See* 9 FAM 502.5-12(B)(a)(5)(b) (Sept. 8, 2022) (discussing eligibility of surviving child), *available at* https://web.archive.org/web/20220908060535/https://fam.state.gov/fam/09FAM/09FAM050205.html.

## CLAIMS FOR RELIEF

### CLAIM ONE
### Administrative Procedure Act ("APA")

*Plaintiff M.M.M.*

138.    The foregoing allegations are repeated and re-alleged as though fully set forth herein.

139.    On July 20, 2022, Defendants stopped requiring Afghan SIV applicants to submit Form I-360 to USCIS.

140.    Following this change, Defendants began using Form DS-157—which applicants submit at the beginning of the SIV application process, when they apply for COM approval—to determine a child's adjusted age under CSPA in cases where the child's parent did not submit Form I-360. 9 FAM 502.1-1(D)(4)(a)(6).

141.    Because a visa is immediately available for Afghan SIV applicants, Defendants functionally freeze children's ages on date their parent applies to the SIV program, unless their parent previously filed Form I-360 with USCIS.

142.    M.M.M.'s children were 16 and 17 years old when he submitted Form DS-157, and they are unmarried.

143.    If M.M.M. had received COM approval later than July 20, 2022, Defendants would allow M.M.M. to add his two oldest children to his SIV application as derivatives because they were under 21 when he submitted Form DS-157 and are unmarried.

144.    But because M.M.M. received COM approval and submitted Form I-360 prior to July 20, 2022, Defendants did not freeze his children's ages until the date he submitted Form I-360.  Defendants thereafter determined that M.M.M.'s two oldest children had become too old to be included in his SIV application as derivatives.

145.    Defendants' determination that M.M.M.'s two oldest children had become too old to be included in his SIV application as derivatives was final agency action subject to judicial review. *See* 5 U.S.C. § 704.

146.    APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

147.    Defendants' determination that M.M.M.'s children had become too old to be included in his SIV application as derivatives was arbitrary and capricious for multiple reasons, including but not limited to failure to consider important factors, failure to consider reasonable alternatives, and subjecting similarly situated individuals to different treatment on an arbitrary basis.

148.    Defendants' determination that M.M.M.'s two oldest children had become too old to be included in his SIV application as derivatives should be vacated and set aside, and remanded to the State Department for reconsideration in light of this Court's opinion.

## CLAIM TWO

## <u>APA</u>

*Plaintiff G.S.*

149.    The foregoing allegations, including ¶¶ 139-141, are repeated and re-alleged as though fully set forth herein.

150.    G.S.'s children were 16, 17, and 20 years old when he applied to the SIV program, and they are unmarried.

151.    If G.S. had received COM approval later than July 20, 2022, Defendants would allow G.S. to add his two oldest children to his SIV application as derivatives, because they were under 21 when he submitted Form DS-157 and are unmarried.

152.    But because G.S. received COM approval and submitted Form I-360 prior to July 20, 2022, Defendants did not freeze his children's ages until the date G.S. submitted Form I-360. Defendants thereafter determined that G.S.'s three oldest children had become too old to be included in his SIV application as derivatives.

153.    Defendants' determination that G.S.'s three oldest children had become too old to be included in his SIV application as derivatives was final agency action subject to judicial review. *See* 5 U.S.C. § 704.

154.    APA provides that a Court "shall hold unlawful and set aside agency actions, finding, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

155.    Defendants' determination that G.S.'s three oldest children had become too old to be included in his SIV application as derivatives was arbitrary and capricious for multiple reasons, including but not limited to failure to consider important factors, failure to consider reasonable alternatives, and subjecting similarly situated individuals to different treatment on an arbitrary basis.

156.    Defendants' determination that G.S.'s three oldest children had become too old to be included in his SIV application as derivatives should be vacated and set aside, and remanded to the State Department for reconsideration in light of this Court's opinion.

## CLAIM THREE

## APA

*Plaintiff M.O.K.*

157.    The foregoing allegations, including ¶¶ 139-141, are repeated and re-alleged as though fully set forth herein.

158.    M.O.K.'s daughter was 14 years old when he submitted Form DS-157, and she is unmarried.

159.    If M.O.K. had received COM approval later than July 20, 2022, Defendants would allow M.O.K. to add his daughter to his SIV application, because she was under 21 when he submitted Form DS-157 and is unmarried.

160.    But because M.O.K. received COM approval and submitted Form I-360 prior to July 20, 2022, Defendants did not freeze his daughter's age until the date M.O.K. submitted Form I-360. Defendants thereafter determined that M.O.K.'s daughter had become too old to be included in his SIV application as a derivative.

161.    Defendants' determination that M.O.K.'s daughter had become too old to be included in his SIV application as a derivative was final agency action subject to judicial review. *See* 5 U.S.C. § 704.

162.    APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

163.    Defendants' determination that M.O.K.'s daughter had become too old to be included in M.O.K.'s SIV application as a derivative was arbitrary and capricious for multiple reasons, including but not limited to failure to consider important factors, failure to consider

reasonable alternatives, and subjecting similarly situated individuals to different treatment on an arbitrary basis.

164.    Defendants' determination that M.O.K.'s daughter had become too old to be included in M.O.K.'s SIV application as a derivative should be vacated and set aside, and remanded to the State Department for reconsideration in light of this Court's opinion.

## CLAIM FOUR

## APA

*Plaintiff B.S.S.*

165.    The foregoing allegations, including ¶¶ 139-141, are repeated and re-alleged as though fully set forth herein.

166.    B.S.S.'s oldest son was under the age of 21 when B.S.S. submitted Form DS-157, and his oldest son is unmarried.

167.    If B.S.S. had received COM approval after July 20, 2022, Defendants would allow B.S.S. to add his oldest son to his SIV application, because his oldest son was under 21 when he submitted Form DS-157 and is unmarried.

168.    But because B.S.S. received COM approval and submitted Form I-360 prior to July 20, 2022, Defendants did not freeze his son's age until the date B.S.S. submitted Form I-360. Defendants thereafter determined that his oldest son had become too old to be included in B.S.S.'s SIV application as a derivative.

169.    Defendants' determination that B.S.S. had become too old to be included in B.S.S.'s SIV application as a derivative is final agency action subject to judicial review. *See* 5 U.S.C. § 704.

170. APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

171. Defendants' determination that B.S.S.'s oldest son had become too old to be included in B.S.S.'s SIV application was arbitrary and capricious for multiple reasons, including but not limited to failure to consider important factors, failure to consider reasonable alternatives, and subjecting similarly situated individuals to different treatment on an arbitrary basis.

172. Defendants' determination that B.S.S.'s oldest son had become too old to be included in his SIV application as a derivative should be vacated and set aside, and remanded to the State Department for reconsideration in light of this Court's opinion.

**CLAIM FIVE**

**<u>APA</u>**

*Plaintiff H.K.*

173. The foregoing allegations are repeated and re-alleged as though fully set forth herein.

174. Defendants determined that H.K. could not proceed with an SIV application based on his father's employment on behalf of the U.S. government because H.K. was over 21 years of age on the date that his mother submitted Form I-360 to USCIS.

175. Defendants' determination that H.K could not proceed with an SIV application based on his father's employment on behalf of the U.S. government was final agency action subject to judicial review. *See* 5 U.S.C. § 704.

176.    APA provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

177.    Defendants' determination that H.K could not proceed with an SIV application based on his father's employment on behalf of the U.S. government was arbitrary, capricious, and contrary to law for multiple reasons, including failure to consider important factors, failure to consider reasonable alternatives, and subjecting similarly situated individuals to different treatment on an arbitrary basis.

178.    Defendants' determination that H.K. could not proceed with an SIV application based on his father's employment on behalf of the U.S. government was also arbitrary, capricious, or contrary to law under the *Accardi* doctrine, because Defendants' determination violated the State Department's policies and procedures, including those set forth in 9 FAM 502.5-12(C)(a)(5)(d), and the violation caused H.K. substantial prejudice.

179.    Defendants' determination that H.K. could not pursue an SIV application based on his father's employment on behalf of the U.S. government should be vacated and set aside, and remanded to the State Department for reconsideration in light of this Court's opinion.

## CLAIM SIX

### Fifth Amendment - Equal Protection

*(as to Plaintiffs M.O.K. and B.S.S.)*

180.    The foregoing allegations are repeated and re-alleged as though fully set forth herein.

181.    The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from denying persons the equal protection of the laws.

27

182.    Defendants' determination that Plaintiffs M.O.K. and B.S.S.'s children had become too old to be included in their SIV applications subjected these Plaintiffs to different, and less favorable, treatment than similarly situated SIV applicants for reasons that are arbitrary.

183.    Defendants' decision to treat Plaintiffs M.O.K. and B.S.S. differently based on the fact that they filed Form I-360 lacks a rational basis and cannot be justified by a legitimate government interest.

184.    Defendants' determination that Plaintiffs' children aged out of eligibility to relocate to the United States as derivative SIVs violates Plaintiffs' equal protection rights protected by the Fifth Amendment of the Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.      Declare that each of Defendants' determinations listed below was arbitrary and capricious, an abuse of discretion, or not otherwise in accordance with law:

      a.   Defendants' determinations that M.M.M.'s two oldest children had become too old and thus ineligible to be included in M.M.M.'s SIV application as derivatives;

      b.   Defendants' determinations that G.S.'s three oldest children had become too old and thus ineligible to be included in G.S.'s SIV application as derivatives;

      c.   Defendants' determination that M.O.K.'s daughter had become too old and thus ineligible to be included in M.O.K.'s SIV application as derivatives;

      d.   Defendants' determination that B.S.S.'s oldest son had become too old and thus ineligible to be included in B.S.S.'s SIV application as derivatives;

      e.   Defendants' determination that H.K. was too old and thus ineligible to proceed with an SIV application based on his deceased father's employment on behalf of the U.S. government.

2.      Vacate and set aside each of the following determinations:

      a.   Defendants' determinations that M.M.M.'s two oldest children had become too old and thus ineligible to be included in M.M.M.'s SIV application as derivatives;

      b.   Defendants' determinations that G.S.'s three oldest children had become too old and thus ineligible to be included in G.S.'s SIV application as derivatives;

    c.   Defendants' determination that M.O.K.'s daughter had become too old and thus ineligible to be included in M.O.K.'s SIV as derivatives;

    d.   Defendants' determination that B.S.S.'s oldest son had become too old and thus ineligible to be included in B.S.S.'s SIV application as derivatives;

    e.   Defendants' determination that H.K. was too old and thus ineligible to proceed with an SIV application based on his deceased father's employment on behalf of the U.S. government.

3.     Remand the following determinations to the State Department for reconsideration:

    a.   Defendants' determinations that M.M.M.'s two oldest children had become too old and thus ineligible to be included in M.M.M.'s SIV application as derivatives;

    b.   Defendants' determinations that G.S.'s three oldest children had become too old and thus ineligible to be included in G.S.'s SIV application as derivatives;

    c.   Defendants' determination that M.O.K.'s daughter had become too old and thus ineligible to be included in M.O.K.'s SIV application as a derivative;

    d.   Defendants' determination that B.S.S.'s oldest son had become too old and thus ineligible to be included in B.S.S.'s SIV application as a derivative;

    e.   Defendants' determination that H.K. was too old and thus ineligible to proceed with an SIV application based on his deceased father's employment on behalf of the U.S. government.

4.     Declare that Defendants' determinations that M.O.K.'s daughter and B.S.S.'s son had become too old to be included in their SIV applications were unconstitutional and violated the equal protection component of the Due Process Clause of the Fifth Amendment.

5.     Retain jurisdiction over this action and any attendant proceedings until Defendants have reached a final decision as to whether the following children can be added to their parent's SIV applications as derivatives, and whether H.K. can proceed with an SIV application based on his deceased parent's employment on behalf of the U.S. government, and have communicated these results to Plaintiffs and the Court:

     a.  M.M.M.'s two oldest children;

     b.  G.S.'s three oldest children;

     c.  M.O.K.'s daughter;

     d.  B.S.S.'s oldest son;

     e.  H.K.

6.     Award Plaintiffs attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

7.     Award such other and further relief that the Court deem just and proper.

Dated: June 27, 2024                   Respectfully submitted,

*/s/ Edward J. Bennett*
Edward J. Bennett (VSB No. 40118)
John E. Joiner (*pro hac* pending)
Ryan T. Scarborough (VSB No. 43170)
Nicole E. Ratelle (*pro hac* pending)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
ebennett@wc.com
jjoiner@wc.com
rscarborough@wc.com
nratelle@wc.com

Alexandra Zaretsky (*pro hac* pending)
Linda Evarts (*pro hac* pending)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, NY 10004
Telephone: (516) 838-1655
Fax: (516) 324-2267
azaretsky@refugeerights.org
levarts@refugeerights.org

*Counsel for Plaintiffs*