**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION**

M.M.M., G.S., M.O.K., B.S.S, and H.K.,

                                 Plaintiffs,

      – *versus* –

UNITED STATES DEPARTMENT OF STATE,

                 and

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY

                             Defendants.

**Case No. 1:24-cv-01120**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (ECF NOS. 28, 29)**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 7

   I.    TRANSFER OF VENUE IS NOT APPROPRIATE ............................................. 7

   II.   THIS COURT HAS SUBJECT MATTER JURISDICTION ....................................... 11

     A.   Plaintiffs Have Suffered an Injury-in-Fact Sufficient to Establish Article III Standing.
       11

     B.   Defendants' Decisions are Final Actions under the Administrative Procedure Act .. 13

   III.   PLAINTIFFS STATE A CLAIM FOR RELIEF ........................................................ 17

     A.   The Consular Nonreviewability Doctrine is Inapplicable ........................................... 17

     B.   There is No Basis to Dismiss Plaintiffs M.O.K. and B.S.S.'s Equal Protection Claims.
       20

CONCLUSION ................................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565 (D.D.C. Sept. 20, 2019) ................... 10

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Blinken*, 103 F.4th 807 (D.C. Cir. 2024) .................................................................... 13

*Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989) .......... 21

*Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018) ........................................................ 18, 19

*Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400 (S.D.N.Y. 2006) ............................ 18, 19

*Ameen v. Dep't of State*, 2024 WL 3416264 (E.D. Va. July 15, 2024) ........................................ 19

*Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253 (E.D. Va. 1988) ...................................................................... 8, 9

*Berenjian v. Blinken*, No. 1:24-CV-00663-MSN-IDD, 2024 WL 3732451 (E.D. Va. Aug. 8, 2024) (Nachmanoff, J.) ...................................................... 2, 11, 12, 13

*Boynton v. Headwaters, Inc.*, No. 1:02-CV-01111, 2010 WL 2991056 (W.D. Tenn. July 27, 2010) ............................................................................................ 8

*Chamblee v. Espy*, 100 F.3d 15 (4th Cir. 1996) .................................................................. 16

*Chenari v. USCIS*, No. TJS-23-1649, 2024 WL 895111 (D. Md. Mar. 1, 2024) .......................... 9

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) ........................................... 21

*Coniglio v. Garland*, 556 F. Supp. 3d 187 (E.D.N.Y. 2021) .................................................. 19, 20

*Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626 (E.D. Va. 2010) .......................................................................................................... 8

*Danbridge v. Williams*, 397 U.S. 471 (1970) ...................................................................... 22, 23

*Department of State v. Munoz*, 144 S. Ct. 1812 (2024) ...................................................... 12, 19

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011) ................... 17

*Emami v. Nielsen*, 365 F. Supp. 3d 1009 (N.D. Cal. 2019) .................................................... 20

*F.L.B. v. Lynch*, 180 F. Supp. 3d 811 (W.D. Wash. 2016) ..................................................... 7

*Farrell v. Tillerson*, 315 F. Supp. 3d 47 (D.D.C. 2018) ...........................................................14, 15

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA.*, 313 F.3d 852 (4th Cir. 2002)...............16

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)........................................................................14

*Golden and Zimmerman, L.L.C. v. Domenech*, 599 F. Supp. 2d 702 (E.D. Va. 2009) ................16

*Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020) ................................................................13

*Hernandez Castro v. Mayorkas*, No. 2:21-CV-00315-SAB, 2022 WL 1085682 (E.D. Wash. Apr. 11, 2022)..................................................................................................14

*Jake's Fireworks Inc. v. U.S. Consumer Product Safety Commission*, 105 F.4th 627 (4th Cir. 2024).......................................................................................................................15

*Karaoglu v. U.S. Dep't of Homeland Sec.*, No. CV DKC 23-749, 2023 WL 4627277 (D. Md. July 19, 2023)...............................................................................................9

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009).................................................................11

*Kleindienst v. Mandel*, 408 U.S. 753 (1972)...............................................................................12

*Kusmierz v. Napiorkowski*, No. RWT 10-CV-2543, 2013 WL 709674 (D. Md. Feb. 26, 2013) ..........................................................................................................................8

*Maramjaya v. U.S. Citizenship & Immigr. Servs.*, No. 1:06-CV-2158 (RCL), 2008 WL 9398947 (D.D.C. Mar. 26, 2008).......................................................................19

*Massachusetts Board of Retirees v. Murgia*, 427 U.S. 307 (1976) ..............................................23

*Monarch Networking Solutions LLC v. Juniper Networks, Inc.*, No. 1:23-cv-670, 2023 WL 11717092 (E.D. Va. Oct. 3, 2023).............................................................................9

*NAACP v. Bureau of the Census*, 945 F.3d 183 (4th Cir. 2019)..................................................14

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016)........................................................................13, 18

*Onuchukwu v. Clinton*, 408 F. App'x 558 (3d Cir. 2010) ..........................................................19

*P.K. v. Tillerson*, 302 F. Supp. 3d 1 (D.D.C. 2017)....................................................................20

*Parsons v. U.S. Dep't of Justice*, 878 F.3d 162 (6th Cir. 2017) ..................................................16

*Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997)...............................................................................19

*Pietersen v. U.S. Dep't of State*, No. 22-CV-3544 (DLF), 2024 WL 1239706 (D.D.C. Mar. 21, 2024).......................................................................................................12

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ..................................................9, 10

*Polyzopoulos v. Garland*, No. 20-0804 (CKK), 2021 WL 1405883 (D.D.C. Apr. 14, 2021) .......................................................................................................................13

*R.V. v. Mnuchin*, 570 F. Supp. 3d 322 (D. Md. 2021) ...............................................22

*Ramizi v. Blinken*, No. 5:23-CV-000730-M, 2024 WL 3875041 (E.D.N.C. Aug. 14, 2024) .......12

*Romero v. Consulate*, 860 F. Supp. 319 (E.D. Va. 1994) ...............................13, 19

*Saavedra Bruno v. Albright*, 197 F.3d 1153 (D.C. Cir. 1999) .........................17, 19

*Schweiker v. Wilson*, 450 U.S. 221 (1981) ................................................................21

*Sesay v. United States*, 984 F.3d 312 (4th Cir. 2021) ...............................18, 19

*Smirnov v. Clinton*, 806 F. Supp. 2d 1 (D.D.C. 2011), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012) ..........................................................................................................16

*Sunny v. Biden*, 573 F. Supp. 3d 759 (E.D.N.Y. 2021) .............................................20

*Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436 (4th Cir. 2015) ..................................................................................9

*Trump v. Hawaii*, 585 U.S. 667 (2018) ....................................................................11

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016) ...............................14

*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) ................................................21

*U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924 (E.D. Va. 2005) ..........10

*Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1 (D.D.C. 2009) ...............................13

*Williams v. Illinois*, 399 U.S. 235 (1970) ................................................................22

*Young v. Trump*, 506 F. Supp. 3d 921 (N.D. Cal. 2020) ...........................................12

**Statutes, Regulations, and Rules**

22 C.F.R. § 42.62 .........................................................................................4, 5, 18

87 Fed. Reg. 55,072 (Sept. 8, 2022) ..............................................................................5

5 U.S.C. § 704 .............................................................................................................14

8 U.S.C. § 1101 ............................................................................................................2

8 U.S.C. § 1153 ................................................................................................................3

8 U.S.C. § 1154 ................................................................................................................3

8 U.S.C. § 1202 .............................................................................................................4, 5

28 U.S.C. § 1391 ..............................................................................................................7

28 U.S.C. § 1404 ..............................................................................................................8

Afghan Allies Protection Act, Pub. L. 111-8, 123 Stat. 807 (2009)...................................2, 3, 4, 8

Child Status Protection Act, Pub. L. 107-208, 116 Stat. 927 (2002)...............................................4

9 FAM 502.1-1 ................................................................................................................5

Fed. R. Civ. P. 7 ..............................................................................................................8

Fed. R. Civ. P. 12 ...............................................................................................7, 8, 11, 17

Local Civ. R. 7 ................................................................................................................8

**Other Authorities**

Media Note, Ongoing Efforts to Support Afghan Special Immigrant Visa Applicants,
    https://www.state.gov/ongoing-efforts-to-support-afghan-special-immigrant-visa-
    applicants/ (July 18, 2022)........................................................................................................4

Charles A. Wright, Arthur R. Miller, Federal Practice and Procedure § 3815 (4th ed.
    April 2023 update) ................................................................................................................7

## INTRODUCTION

Plaintiffs offered essential support to the United States in Afghanistan, and in turn they have faced death threats and violence at the hands of the Taliban. All they ask is that Defendant federal agencies do what the law requires: give their families the opportunity to live safely in the United States through the Afghan Special Immigrant Visa program.

Yet our government refuses to allow Plaintiffs M.M.M., G.S., M.O.K., and B.S.S. to add their children to their Special Immigrant Visa (SIV) applications and Plaintiff H.K. to join his father's application.[1] Defendants insist that Plaintiff parents' children and Plaintiff H.K. are now too old to join their parents' applications as derivative beneficiaries—all while permitting other SIV applicants who applied to the program later to bring similarly aged children with them to safety. As a result, Plaintiff parents' children and H.K. cannot complete a visa interview with a consular officer, obtain a visa, and relocate to safety in the United States. Defendants' arbitrary and capricious decisions as to Plaintiffs and their children are final. Defendants refuse to accept, let alone adjudicate, their visa applications and refuse to reconsider those decisions.

Defendants now argue for a change of venue to the District of Columbia or, alternatively, for dismissal for lack of subject matter jurisdiction or failure to state a claim. All of their arguments fail. Not only did Defendants *not* file a motion to transfer venue, they also do not contest that venue is proper in this District. Nor have they shown that the nearby District of Columbia is a more appropriate or convenient venue. As for subject matter jurisdiction, Defendants raise a

---

[1] When H.K.'s father applied to the SIV program in 2019, Plaintiff H.K. was listed on the application form as a beneficiary. H.K.'s father was murdered by the Taliban after Defendants determined that he was eligible for SIV status, but before they approved his SIV application. After his father's death, H.K. sought to proceed with an SIV application based on his father's qualifying employment on behalf of the U.S. government. *See* Compl. ¶ 3 n.1, ECF No. 1.

standing argument they concede the Court has already considered and rejected in another case. *See Berenjian v. Blinken*, No. 1:24-CV-00663-MSN-IDD, 2024 WL 3732451 (E.D. Va. Aug. 8, 2024) (Nachmanoff, J.).  They also contend there is no final agency action even though Defendants have definitively refused to consider Plaintiffs and their children for SIV derivative status.  As for failure to state a claim, Defendants (1) invoke the doctrine of consular nonreviewability, even as they concede that no consular official ever acted on Plaintiffs' applications; and (2) challenge the equal protection claims of certain Plaintiffs without articulating a specific justification for what is undeniably differential treatment.  Defendants' motion should be denied.

## BACKGROUND

For decades, Afghan nationals who supported the U.S. government's mission in Afghanistan have been targeted, attacked, and killed by the Taliban and other anti-American forces.  *See* Compl. ¶¶ 20–22, ECF No. 1.  Congress recognized a responsibility to ensure the safety of Afghan nationals who helped the United States when it passed the Afghan Allies Protection Act (AAPA) and created the Afghan SIV program.  *See* Pub. L. 111-8, 123 Stat. 807 (2009).  AAPA provides a pathway to immigrate to the United States for Afghan nationals who were employed by or on behalf of the U.S. government for a certain period of time and "provided faithful and valuable service" to the U.S. government, and who "ha[ve] experienced or [are] experiencing an ongoing serious threat as a consequence of [that] employment."  AAPA § 602(b)(2)(A).  Recognizing that applicants' service to the United States also endangers their families, AAPA protects the minor children of qualifying applicants and of deceased qualifying applicants.  So long as an applicant's child is under 21, unmarried, and otherwise qualified, the child may accompany their qualifying parent to the United States or join them later.  *Id.* § 602(b)(2)(B); *see also* 8 U.S.C. § 1101(b)(1) (requiring children to be unmarried and under 21

to qualify as derivatives of a parent).

To avoid penalizing visa applicants and their children for government delays in processing applications, Congress enacted the Child Status Protection Act (CSPA), Pub. L. 107-208, 116 Stat. 927 (2002). *See* 8 U.S.C. § 1153(h). CSPA requires agencies to consider a child's age on the date their parent files an "applicable petition" for immigration status, so the child will not age out of derivative status through no fault of their own or of their applicant parent. *Id.* §§ 1153(h), 1154(a)(1)(G); AAPA § 602(b)(1). Because visas are immediately available to SIV applicants, CSPA functionally "freezes" a child's age on the date their parent files a qualifying SIV petition. Compl. ¶¶ 40–41.

Plaintiff parents and H.K.'s father are all Afghan nationals who faithfully served the U.S. government's mission against the Taliban. Compl. ¶¶ 55, 73, 88, 102, 118. They and their families have been threatened and attacked because of their support for the United States. *Id.* Because of these dangers, Plaintiffs and H.K.'s father all decided to apply for SIVs so they could move with their families to safety in the United States. *Id.* ¶¶ 55–56, 73–74, 88–89, 102–03, 118–19.

Defendants are the two executive agencies charged with implementing and administering the SIV program. AAPA § 602(b)(1). Before July 20, 2022, Defendants required SIV applicants outside of the United States, like Plaintiffs and H.K.'s father, to follow four primary steps:

1. Applicants applied for Chief of Mission (COM) approval by submitting Form DS-157 and evidence of qualifying employment to the State Department. COM determined whether applicants met the statutory requirements for a SIV.

2. Applicants submitted a petition for special immigrant status, known as Form I-360, to USCIS. At this stage, USCIS again confirmed that applicants met the statutory eligibility requirements for the SIV program.

3

3. Applicants had to apply for and be granted visas. After USCIS approved Form I-360, the applicant had to submit a formal visa application (Form DS-260) on behalf of themselves and each qualifying derivative. Applicants and their derivatives *could not* access a visa application or file a visa application without action from the State Department. Applicants could only submit Form DS-260 after the State Department created individualized forms for each family member in the Consular Electronic Application Center and granted the applicant access. The applicant and qualifying derivatives were subsequently interviewed by a consular officer at a U.S. Embassy or Consulate, at which point each person executed and formally submitted their visa application.

4. A consular officer approved the visa applications, enabling the applicant and derivatives to obtain visas and travel to the United States.

Compl. ¶ 31; *see also* 8 U.S.C. § 1202(a); 22 C.F.R. § 42.62(a), (b)(1). This process was in place when Plaintiffs and H.K.'s father applied for and received COM approval. Compl. ¶ 32.

Despite Congress' direction to process SIV applications in under nine months, AAPA § 602(b)(4)(A), Defendants have taken as long as seven years to complete just the first step of the SIV process, even as Plaintiffs remained in danger, *see, e.g.*, Compl. ¶¶ 89, 91 (alleging M.O.K. waited over seven years for COM approval). Before July 20, 2022, Defendants did not freeze the ages of Afghan SIV applicants' children under CSPA until after the applicant received COM approval and filed Form I-360. *Id*. ¶ 42.

In order to "eliminate barriers for applicants and reduce application times," in July 2022, the Secretary of State and Secretary of Homeland Security directed their agencies to "simplify and streamline the application process for Afghan applicants." Media Note, Ongoing Efforts to

Support Afghan Special Immigrant Visa Applicants, https://www.state.gov/ongoing-efforts-to-support-afghan-special-immigrant-visa-applicants/ (July 18, 2022); *see also* 87 Fed. Reg. 55,072 (Sept. 8, 2022). Defendants eliminated the redundant second verification of eligibility (Form I-360), condensing the SIV application process from four primary steps to three:

1. Applicants apply for COM approval by submitting Form DS-157, and the State Department confirms that applicants are eligible for the program.

2. Applicants can apply for visas using Form DS-260 after the State Department makes that form available to them. They are then interviewed by a consular officer, at which point they can execute and formally submit their visa applications.

3. A consular officer approves the visa applications, enabling the applicants and derivatives obtain visas and travel to the United States.

Compl. ¶¶ 33–34; *see also* 8 U.S.C. § 1202(a); 22 C.F.R. § 42.62(a), (b)(1). Form DS-157 remains the same in substance as under the old process. Compl. ¶¶ 36–37.

Following this change, Defendants created a new policy for determining the ages of SIV derivative children. More recent applicants who had not yet filed the duplicative Form I-360 benefitted from the new policy. Their children's ages were effectively "frozen" on the date the applicants applied for COM approval (Step 1). In other words, Defendants began to treat Form DS-157 as the "applicable petition" to calculate the age of those SIV children. *Id.* ¶ 46 (citing 9 FAM 502.1-1(D)(4)(a)(6) (last visited June 26, 2024)). However, longer-pending applicants, including Plaintiff parents and H.K.'s father, continued to be penalized for the government's lengthy processing delays: Defendants continued to "freeze" their children's ages on the date the applicant submitted Form I-360—the now-defunct Step 2 of the old process. *Id.* ¶¶ 46, 53–54.

Consistent with this policy, Defendants refused to calculate H.K. and Plaintiff parents' children's ages based on the dates their parents applied for COM approval—when nearly all of the children were between 14 and 18 years old.  Compl. ¶¶ 56, 64, 67, 70, 74, 85, 87, 89, 97, 103, 107, 109, 120, 129.  Rather, they calculated the children's ages based on the dates when the parents filed Form I-360 many years later.  *Id.*  Then, Defendants refused to allow the children to proceed with SIV processing at all—refusing to allow them to formally execute a visa application before and interview with a consular officer, or even to complete necessary antecedent steps (such as filling out a DS-260 online or boarding an evacuation flight to a country where they could be interviewed).  *Id.* ¶¶ 64, 70, 83, 85, 97, 107, 111, 128.  Specifically, Defendants "did not permit" Plaintiffs M.M.M. and B.S.S. to submit the visa applications, Form DS-260, for their oldest children.  *Id*. ¶¶ 63–64, 107.  Defendants reiterated that M.M.M. and B.S.S.'s children "had become too old to be included in [their] SIV application[s]" when they refused to allow them to board rescue flights out of Afghanistan.  *Id.* ¶¶ 65–68, 109–113.  Likewise, Defendants "did not permit H.K." to submit Form DS-260.  *Id.* ¶ 128.  Defendants told M.O.K. that his daughter "was ineligible to be interviewed for a visa because she was over 21."  *Id.* ¶ 97.  Finally, Defendants determined that G.S.'s oldest children are "too old to be included in his SIV application" and refused to evacuate them.  *Id.* ¶¶ 82–83, 85.  Each Plaintiff subsequently requested that Defendants reconsider the eligibility determinations.  Defendants refused, reiterating that Plaintiffs' children and H.K. are "not eligible as derivative applicants."  *Id.* ¶¶ 69–70 (M.M.M.'s two children); *id.* ¶¶ 86–87 (G.S.'s three children); *id.* ¶¶ 100–01 (M.O.K.'s daughter); *id.* ¶¶ 115–16 (B.S.S.'s son); *id.* ¶¶ 134–35 (H.K.).

Plaintiff parents and H.K.'s mother have faced an impossible choice between remaining in danger in Afghanistan or leaving their children behind when they immigrate to the United States.

Plaintiffs M.M.M. and G.S. decided to keep their families together and remain in Afghanistan in fear and in hiding.  *Id*. ¶¶ 65–68, 84.  Plaintiffs B.S.S. and M.O.K., along with H.K.'s mother, made the difficult choice to leave their children behind and come to the United States.  *Id.* ¶¶ 98, 113–14, 136–37.  B.S.S. moved to North Carolina, and M.O.K. moved to Aldie, Virginia.  *Id.* ¶¶ 15–16.

On June 27, 2024, Plaintiffs filed their Complaint in this Court to challenge Defendants' arbitrary and irrational decisions and to attempt to finally bring their families to safety in the U.S.  *See generally* Compl.  On September 17, 2024, Defendants moved to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  *See* ECF Nos. 28, 29.

## ARGUMENT

## I.    TRANSFER OF VENUE IS NOT APPROPRIATE.

The Court should reject Defendants' request to transfer this case from the courthouse in Alexandria, Virginia to one in the District of Columbia—less than 10 miles away.  Defendants do not dispute that venue is proper in this District.  Defs. Br. at 10–14, ECF No. 30.  Nor could they.  "A civil action in which a defendant is . . . an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which . . . the plaintiff resides[.]"  28 U.S.C. § 1391(e)(1)(C); *see also* Compl. ¶ 15.[2]  This statute expressly contemplates that suits like this one against government agencies may be litigated outside the District of Columbia.

---

[2] "In cases involving multiple plaintiffs, venue is proper where any one of them resides."  Charles A. Wright, Arthur R. Miller, Federal Practice and Procedure § 3815 (4th ed. April 2023 update); *see also, e.g., F.L.B. v. Lynch*, 180 F. Supp. 3d 811, 815–16 (W.D. Wash. 2016) (citing *Exxon Corp. v. FTC*, 588 F.2d 895 (3d Cir.1978) and *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336 (6th Cir. 2005)).

Notably, Defendants did not move to transfer venue pursuant to 28 U.S.C. § 1404(a). *See* Defs. Mot. to Dismiss, ECF Nos. 28, 29 (moving only to dismiss under Rules 12(b)(1) & (6)). "[I]t is well-understood that a motion to transfer pursuant to 28 U.S.C. § 1404 is distinct from a motion to dismiss pursuant to Rule 12(b)." *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 632–33 (E.D. Va. 2010). Because Defendants have not filed a motion to transfer as required by Federal Rule of Civil Procedure 7—instead simply raising the issue in their brief—the Court should decline to consider Defendants' argument. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."); *Kusmierz v. Napiorkowski*, No. RWT 10-CV-2543, 2013 WL 709674, at *6 n.2 (D. Md. Feb. 26, 2013) (declining to consider request made in brief rather than motion); *Boynton v. Headwaters, Inc.*, No. 1:02-CV-01111, 2010 WL 2991056, at *1 n.1 (W.D. Tenn. July 27, 2010) (same).[3]

Defendants' venue argument fails on the merits in any event. The entirety of their argument is that "convenience" and the fact that the events at issue did not take place in Virginia "weigh[] in favor of transfer" and trump Plaintiffs' choice of forum. Defs. Br. at 11. Defendants' own cited cases confirm that they cannot meet the standard for venue transfer. "[B]efore transfer is warranted, a defendant must demonstrate that the deference due plaintiff's choice of venue is *clearly outweighed* by other factors." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988) ("*Baylor*") (citation and internal quotation omitted) (emphasis added); *see also Karaoglu v. U.S. Dep't of Homeland Sec.*, No. CV DKC 23-749, 2023 WL 4627277, at *2 (D. Md. July 19, 2023) (party moving to

---

[3] This District's Local Civil Rule 7 further confirms that a brief filed alongside a motion should provide "a concise statement of facts and supporting reasons, along with a citation of the authorities on which the movant relies" to support the motion made and is not an appropriate place to seek different relief from the motion itself. *See* Local Civ. R. 7(F)(1).

transfer "bears the burden to establish . . . that the action should have been brought" in the proposed transferee court"). Courts in this circuit consider four factors on a venue transfer motion: "1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties; and 4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

With respect to the first factor, Defendants do not dispute that Plaintiff M.O.K.'s "selection of his . . . home forum is 'entitled to substantial deference.'" Defs. Br. at 12 (citing *Baylor*, 702 F. Supp at 1257); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). But Defendants nonetheless argue that the first factor "weighs in favor of transfer." *Id.* They rely on two inapposite cases,[4] and one case that strongly supports denying transfer, *see Baylor*, 702 F. Supp. 1253. In *Baylor*, the plaintiff filed the case in its home forum and the defendant proposed transfer to the venue where the cause of action arose. *Id.* at 1257. Even after recognizing that the weight of plaintiff's choice was "somewhat reduced" by the absence of a substantial nexus between the forum and the acts at issue, the court denied the motion to transfer, reasoning that the other factors simply did not outweigh the plaintiff's choice, regardless of the fact that the defendant would suffer real inconvenience. *Id.* at 1257–62. As in *Baylor*, the Court here should decline to transfer venue and afford "substantial deference" to Plaintiffs' venue selection. *Id.* at 1257.

As to the second and third factors, Defendants concede that witness convenience is "not a significant factor" in an APA case like this that will be focused on an administrative record. Defs. Br. at 13. Defendants also do not attempt to explain why any witnesses or parties would be

---

[4] *See Chenari v. USCIS*, No. TJS-23-1649, 2024 WL 895111, at *1 n.4, *2 (D. Md. Mar. 1, 2024) (granting motion to transfer where plaintiffs chose a forum that was not the home forum and thus entitled to less weight); *Monarch Networking Solutions LLC v. Juniper Networks, Inc.*, No. 1:23-cv-670, 2023 WL 11717092, at *4 (E.D. Va. Oct. 3, 2023) (same).

inconvenienced by going to the Alexandria courthouse, which neighbors the District of Columbia. As the Honorable Judge Ellis in this District has explained: "Convenience of the parties and witnesses is not a significant consideration because less than ten miles separates the courthouse" in Alexandria, Virginia "from the courthouse in the District of Columbia" and "[t]hus, none of the parties can claim any significant inconvenience whether the case is tried here or there." *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd*., 357 F. Supp. 2d 924, 937 (E.D. Va. 2005).

Defendants reiterate these arguments when discussing the fourth factor, even though that factor is designed to encompass issues "unrelated to convenience of witnesses and parties." Defs. Br. at 13 (citing *Baylor*, 702 F. Supp. at 1260). To the extent that Defendants obliquely suggest that the presence of a case in the District of Columbia concerning SIV applicant processing weighs in favor of transfer, *see* Defs. Br. at 11 (citing *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. To the U.S. v Pompeo* ("*Allies*"), No. 18-cv-01388 (TSC) (D.D.C.)), they are mistaken. The *Allies* case is a long-pending class action by Iraqi and Afghan SIV applicants challenging lengthy delays in processing their SIV applications, in which a court granted partial summary judgment to the plaintiffs in 2019. *Allies*, 2019 WL 4575565, at *11–12 (D.D.C. Sept. 20, 2019)*. This case concerns different plaintiffs bringing different claims to challenge the government's unlawful decision to exclude their children from processing as SIV derivatives. *See generally* Compl.

Thus, Defendants do not come close to overcoming the "strong presumption" in favor of Plaintiff's chosen forum, *Piper Aircraft*, 454 U.S. at 255, and did not even move to transfer under § 1404(a). The Court should decline the Defendants' improperly raised invitation to transfer venue.

10

## II.    THIS COURT HAS SUBJECT MATTER JURISDICTION.

Defendants' arguments under Rule 12(b)(1) are similarly without merit.  Where, as here, Defendants bring a facial challenge to the sufficiency of the Court's subject matter jurisdiction, the Court must treat the facts alleged in the complaint as true.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  "[T]he plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Defendants admit the Court has rejected their standing argument in *Berenjian* and, accepting as true the facts alleged in the Complaint, it is irrefutable that Defendants' challenged actions are final.

### A.    Plaintiffs Have Suffered an Injury-in-Fact Sufficient to Establish Article III Standing.

Defendants concede at the outset that this Court has recently rejected their standing argument, and they include it in their brief only "to preserve it for appellate review."  Defs. Br. at 15 (citing *Berenjian*, 2024 WL 3732451, at *2 (Nachmanoff, J.)).

Article III standing requires a plaintiff to "demonstrate a[n] (1) injury in fact that is (2) fairly traceable to Defendants' conduct, and is (3) likely to be redressed by a favorable decision."  *Berenjian*, 2024 WL 3732451, at *2 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Defendants' argument is limited to the first element.  They argue that Plaintiffs lack an injury-in-fact because their claims are "based on the events associated with the[ir] children's eligibility for a derivative visa."  Defs. Br. at 15 (emphasis removed).  As this Court held in *Berenjian*, however, a plaintiff suffers a cognizable Article III injury where the government's alleged mishandling of a family member's visa application "prevented [the plaintiff] from being united with his family."  *Berenjian*, 2024 WL 3732451, at *2; *see also, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 698 (2018) ("[A] person's interest in being united with his relatives is

11

sufficiently concrete and particularized to form the basis of an Article III injury in fact."); *Pietersen v. U.S. Dep't of State*, No. 22-CV-3544 (DLF), 2024 WL 1239706, at *4 (D.D.C. Mar. 21, 2024) (holding a plaintiff had standing where he had a "bona fide relationship with a particular person seeking to enter the country," as he "can legitimately claim concrete hardship if that person is excluded."); *Young v. Trump*, 506 F. Supp. 3d 921, 935 (N.D. Cal. 2020) (holding plaintiffs had standing where they "allege[d] . . . the complete freeze of their beneficiaries' immigrant visa petitions.").

The Court further held in *Berenjian* that a plaintiff need not demonstrate a "constitutional right to live with his" family member to show standing, rejecting another argument that Defendants make here. *Berenjian*, 2024 WL 3732451, at *2; *cf.* Defs. Br. at 15. *Berenjian* explained that requiring such a showing would conflate the standing inquiry with the merits inquiry.[5]  2024 WL 3732451, at *2; *see, e.g.*, *Ramizi v. Blinken*, No. 5:23-CV-000730-M, 2024 WL 3875041, at *6 (E.D.N.C. Aug. 14, 2024) ("[w]hether Plaintiffs possess 'standing in no way depends on the merits' of their claim") (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  *Berenjian* is on point and demonstrates why Defendants' unlawful refusal to allow Plaintiffs' children (and H.K. himself) to join their parents' SIV applications has resulted in injuries-in-fact to Plaintiffs that are cognizable under Article III.

Furthermore, courts have repeatedly held that foreign nationals abroad have standing to challenge unlawful government conduct that exposes them and their families to imminent harm.

---

[5] In *Berenjian*, the Court explained that the government's reliance on *Department of State v. Munoz*, 144 S. Ct. 1812 (2024), was misplaced in a standing analysis, as the Supreme Court necessarily determined that the *Munoz* plaintiffs had Article III standing when it proceeded to the merits.  2024 WL 3732451, at *2.  Similarly, here Defendants misconstrue the Supreme Court's decision in *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).  *See* Defs. Br. at 15–16.  In *Mandel*, just as in *Munoz*, the Supreme Court did not address standing and decided the case on the merits. *Mandel*, 408 U.S. 762–70.

*See, e.g.*, *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 281–82 (D.D.C. 2016) (holding that non-citizen SIV applicants abroad had Article III standing to bring claims arising from government delay in the processing of their SIV applications); *Gomez v. Trump*, 485 F. Supp. 3d 145, 170–71, 173–75 (D.D.C. 2020) (holding non-citizen plaintiffs living abroad had standing where they alleged injury from the government's suspension of entry for immigrants into the United States following the onset of the COVID pandemic).  Indeed, in *Allies*—a case concerning SIV applicants that Defendants cite, *see* Defs. Br. at 6 n.3, 11—the court granted partial summary judgment in favor of non-citizen SIV applicants abroad and entered a permanent injunction.  *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Blinken*, 103 F.4th 807, 812 (D.C. Cir. 2024).

Defendants' arguments to the contrary rely on three unpersuasive and non-binding district court opinions construing consular nonreviewability, a distinct doctrine discussed below.  *See* Defs. Br. at 16 (citing *Polyzopoulos v. Garland*, No. 20-0804 (CKK), 2021 WL 1405883, at *7 (D.D.C. Apr. 14, 2021); *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 5 (D.D.C. 2009); *Romero v. Consulate*, 860 F. Supp. 319, 323 n.7 (E.D. Va. 1994)).  To the extent the cases address Article III injury at all, they assume that the merits and standing inquiries overlap, *see Polyzopoulos*, 2021 WL 1405883, at *5–7; *Van Ravenswaay*, 613 F. Supp. 2d at 3–5; *Romero*, 860 F. Supp. at 321–25, which this Court rejected in *Berenjian*, 2024 WL 3732451, at *2.

In sum, each Plaintiff has a cognizable Article III injury.  Defendants' unlawful actions are the reason Plaintiffs are unable to live in safety together with their families in the United States.

### B.    Defendants' Decisions are Final Actions under the Administrative Procedure Act.

Defendants' actions constitute final action.  Defendants have conclusively denied Plaintiffs the opportunity to add their children to their SIV applications or, in H.K.'s case, to join his parent's

application.  Defendants' definitive refusal to accept executed visa applications from Plaintiffs'
children and H.K. and refusal to interview them ended their SIV application processing and
thereby prevented the children from traveling with their parents to safety.  Defendants' insistence
that there can be no final action because the ultimate agency authority never considered the
children's visa applications is unavailing, elevating form over substance and ignoring the real-
world impacts of their decisions.

The APA permits challenges of "final agency action."  5 U.S.C. § 704.  An agency action
is deemed final if it (1) "mark[s] the consummation of the agency's decisionmaking process" and
(2) is "one by which rights or obligations have been determined, or from which legal consequences
will flow."  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett
v. Spear*, 520 U.S. 154, 177–78 (1997)); *see also NAACP v. Bureau of the Census*, 945 F.3d 183,
189 (4th Cir. 2019).  "The core question is whether the agency has completed its decisionmaking
process, and whether the result of that process is one that will directly affect the parties." *Franklin
v. Massachusetts*, 505 U.S. 788, 797 (1992).  Defendants' determinations to apply their
discriminatory age-out policy to Plaintiffs and their children easily meet both of these factors.

With respect to the first prong, Defendants argue that because Plaintiffs' children and H.K.
"did not execute visa applications before a consular officer," who is "the only official who can
issue immigrant visas," they fail to allege any final agency action.  Defs. Br. at 19.  Not so.  A
determination by an "initial decisionmaker" is just as final as a decision by the ultimate agency
authority where the decision demonstrates that the agency "has arrived at a definitive position on
the issue that inflicts an actual, concrete injury."  *Farrell v. Tillerson*, 315 F. Supp. 3d 47, 59–60
(D.D.C. 2018) (quoting *Darby v. Cisneros*, 509 U.S. 137, 143 (1993)); *see also Hernandez Castro
v. Mayorkas*, No. 2:21-CV-00315-SAB, 2022 WL 1085682, at *5–6 (E.D. Wash. Apr. 11, 2022)

14

(denying motion to dismiss because plaintiffs plausibly alleged that a doctor's preliminary determination that visa applicant did not meet COVID-19 vaccine requirements was a final agency action in visa application process).

Here, Plaintiffs' children and H.K. were never allowed to interview with a consular officer who could grant them relief because an "initial decisionmaker" took the "definitive position" that Plaintiff parents' children and H.K. were too old to join their parents' SIV applications. *Farrell*, 315 F. Supp. 3d at 59–60. Defendants refused to let M.M.M. and B.S.S.'s children and H.K. to complete even the prerequisite step of filling out derivative visa applications (Form DS-260) for consideration by a consular officer. *See* Compl. ¶¶ 63–64, 107, 128. Defendants told M.O.K. and G.S. that their children were too old to be interviewed by a consular officer or to join their parents on rescue flights needed to complete the visa interview. *Id.* ¶¶ 97, 82–83, 85. Each Plaintiff parent and H.K. subsequently requested that Defendants reconsider their eligibility determination, and Defendants refused, reiterating that Plaintiffs' children and H.K. are ineligible to join their parents' SIV applications. *See id.* ¶¶ 69–70, 86–87, 100–01, 115–16, 134–35. In short, Defendants' eligibility determinations marked the end of the agencies' decision-making. The agencies made it *impossible* for Plaintiffs' children and H.K. to execute visa applications before a consular officer or to have their applications adjudicated by a consular officer.

Defendants do not and cannot make any meaningful comparison between Plaintiffs' circumstances and the cases Defendants cite. *See* Defs. Br. at 17–20. For instance, in the case Defendants primarily rely on, *Jake's Fireworks Inc. v. U.S. Consumer Product Safety Commission*, the court advised that a letter "request[ing]" that a fireworks producer destroy certain products was not final because it "d[id] not command any action" or impose any final result. 105 F.4th 627, 633 (4th Cir. 2024). The fireworks producer remained free to maintain its product and to dispute any

eventual sanction from the government. *See id.*  Plaintiffs here do not have the same choice: Defendants' actions entirely prevent Plaintiffs' children and H.K. from proceeding with the processing required to be considered for and obtain a derivative SIV.

As for the second prong, the law is clear:  "[A] decision to take no further action on, and in effect, to conclude consideration of, pending applications constitutes final agency action." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 11 (D.D.C. 2011), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012); *see also Chamblee v. Espy*, 100 F.3d 15, 17–18 (4th Cir. 1996) (explaining that suspension of plaintiff's application for loan servicing constituted final agency action because "[t]he practical effect . . . was to deny [the plaintiff's] application for loan servicing").  As Plaintiffs allege, Defendants' pre-consular eligibility determinations definitively ended SIV derivative processing for each child, preventing them from ever appearing before a consular officer to execute their visa applications, formally submit them, and be interviewed.  *See* Compl. ¶¶ 63–64, 82–83, 85, 97, 107, 128.  The decisions thereby disqualified children for evacuation flights, which were only available to children "included in their parent's SIV application as an eligible derivative."  *Id.* ¶ 65 & n.5.; *see also id.* ¶¶ 64, 67, 83, 85, 97–99, 109–11.

Defendants again rely on inapplicable authority.  *See* Defs. Br. at 20–21.  Their cases all concern agency actions having no immediate or direct impact on the Plaintiffs, such as advisory or research reports.  *See Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA.*, 313 F.3d 852, 858–59 (4th Cir. 2002) (determining agency action was non-final because agencies were "free to embrace or disregard the Report which is advisory"); *Golden and Zimmerman, L.L.C. v. Domenech*, 599 F. Supp. 2d 702, 711 (E.D. Va. 2009) (same where agency's "FAQ" document did "not of itself adversely affect plaintiffs but only affects their rights adversely on the contingency of future administrative action." (citation omitted)); *Parsons v. U.S. Dep't of Justice*,

16

878 F.3d 162, 169–70 (6th Cir. 2017) (same where agency issued only an "informational report" that did not impose liability).  In contrast, the Defendant agencies here did not need to take any additional steps for their decision-making to impact Plaintiffs.  The agencies' pre-consular eligibility determinations entirely prevented Plaintiffs' children and H.K. from executing a visa application and consular officers from interviewing them, as well as barred the children from evacuation flights.  Defendants' determinations therefore constitute final action.

## III.    PLAINTIFFS STATE A CLAIM FOR RELIEF.

Defendants argue that the causes of action in the Complaint are barred from judicial review under the doctrine of consular nonreviewability and that the equal protection cause of action (Claim 6) fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  *See* Defs. Br. at 22–30.  In considering these arguments, the Court must accept as true all well-pleaded factual allegations in Plaintiffs' Complaint and draw "all reasonable inferences in [Plaintiffs'] favor."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted).  Defendants' arguments are without merit.

### A.    The Consular Nonreviewability Doctrine is Inapplicable.

Defendants admit the decisions Plaintiffs challenge were not made by consular officials. *See* Defs. Br. at 19 (Plaintiffs "*never* had applications adjudicated by . . . a consular officer at a U.S. Embassy or Consulate."); *see also* Compl. ¶¶ 63–64, 82–83, 85, 97, 107, 128 (Defendants did not permit Plaintiffs' children and H.K. to execute visa applications).  They nevertheless contend the consular nonreviewability doctrine bars judicial review of Plaintiffs' claims.  Defs. Br. at 22–24.  Because Defendants provide no basis to apply the doctrine where there is no determination by a consular official on a formally submitted visa application, their argument fails.

The consular nonreviewability doctrine provides that "a *consular official's* decision to issue or withhold a visa is not subject to judicial review."  *Saavedra Bruno v. Albright*, 197 F.3d

1153, 1159 (D.C. Cir. 1999) (emphasis added).  The doctrine is designed to protect "decision[s] taken within the consul's discretion" and based on their unique expertise.  *Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018) (internal quotation marks and citation omitted); *see also Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (explaining that "judicial deference" is due where consular officers "possess expertise in matters falling outside judicial competency, including local conditions in foreign countries, diplomatic relationships and protocols, and national security needs").  Accordingly, the doctrine "is not triggered until a consular official has made a *decision* with respect to a particular visa application."  *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 (determining agency actions impacting non-citizen's special immigrant visas were reviewable); *see also Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 418 (S.D.N.Y. 2006) ("The doctrine of consular nonreviewability applies to review of a consular official's decision to issue or withhold a visa, not to the decisions of non-consular officials[.]" (internal quotation marks and citation omitted)).

Here, the decisions Plaintiffs challenge were not made by consular officials after an adjudication of a formally submitted visa application.  In order for a consular officer to decide an SIV application, an applicant must "appear personally before" the officer, "execut[e] an immigrant visa application," and "be interviewed by a consular officer."  *See* 22 C.F.R. § 42.62(a), (b).  Defendants refused to permit H.K. and each Plaintiffs' child to execute an immigration visa application and formally submit the application, or to be interviewed by a consular officer.  Thus, no consular officer could have adjudicated (or did adjudicate) their applications.  *See* Compl. ¶¶ 63–64, 82–83, 85, 97, 107, 128; *see also* Defs. Br. at 19 (conceding that each Plaintiffs' child and H.K. never had an application adjudicated by a consular officer).  Courts have repeatedly recognized that the consular non-reviewability doctrine does not bar review of such decisions taken

by officials other than consular officers and made before the officer's ultimate and discretionary decision on an executed visa application. *See, e.g.*, *Maramjaya v. U.S. Citizenship & Immigr. Servs.*, No. 1:06-CV-2158 (RCL), 2008 WL 9398947, at *4 (D.D.C. Mar. 26, 2008) (finding consular nonreviewability inapplicable to denial of petition by non-consular officials); *Coniglio v. Garland*, 556 F. Supp. 3d 187, 199–202 (E.D.N.Y. 2021) (same, for revocation of petition); *Chertoff*, 463 F. Supp. 2d at 418 (same, for denial of petition). As in *Coniglio*, because the earlier agency determinations at issue here "result[] not in getting a visa then and there, but simply in a determination that the beneficiary may proceed with the visa application process," they are "legally distinct" from a consular officer's decision on a formally submitted visa application. 556 F. Supp. 3d at 200–01 (internal quotation marks omitted).

Defendants cite no authority warranting a different conclusion. *See* Defs. Br. 22–24. In each of the cases they cite, a consular officer actually adjudicated the visa application following execution of the application *and* an interview. *See Munoz*, 144 S. Ct. at 1818–19; *Sesay*, 984 F.3d at 314; *Milas*, 896 F.3d at 1097; *Saavedra Bruno*, 197 F.3d at 1155; *Onuchukwu v. Clinton*, 408 F. App'x 558, 559–60 (3d Cir. 2010); *Romero*, 860 F. Supp. at 320–21; *Ameen v. Dep't of State*, 2024 WL 3416264, at *1 (E.D. Va. July 15, 2024). By contrast, courts regularly review improper refusals or failures to consider applications before a visa interview, as those types of eligibility determinations do not rely on a consular officer's expertise and discretion. *See, e.g.*, *Milas*, 896 F.3d at 1100 (explaining that federal courts may review "where the [consular] official has failed to act at all"); *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (permitting challenge to suspension of visa applications as this was "not challenging a decision within the discretion of the consul"); *Maramjaya*, 2008 WL 9398947, at *4 (permitting plaintiff to challenge the improper denial of a petition whose granting "is a prerequisite to, but not a guarantee of . . . an immigrant visa");

*Coniglio*, 556 F. Supp. 3d at 201 (permitting plaintiff to challenge USCIS's revocation of its approval of a petition because the decision was distinct from "a consulate's decision to vise a passport, and . . . the [d]octrine of [c]onsular [n]onreviewability shields only the latter decision from judicial review").

Because no consular officer ever exercised their discretion on the merits of Plaintiffs' visa applications, consular nonreviewability does not apply and does not bar this Court from hearing their claims.[6]

### B. There is No Basis to Dismiss Plaintiffs M.O.K. and B.S.S.'s Equal Protection Claims.

Defendants' decision to subject M.O.K. and B.S.S.'s long-pending SIV applications to less favorable treatment than more recently filed SIV applicants (and render their children ineligible for derivative status) fails to pass rational basis review.  The rational basis standard requires an explanation for the challenged classification, and Defendants fail to offer anything other than tautology and unexplained conclusions.  *See* Defs. Br. at 24–30.

Defendants' decision to treat Plaintiffs M.O.K. and B.S.S.'s children differently from similarly situated SIV applicants violates the equal protection guaranteed those Plaintiffs by the U.S. Constitution.  When applying rational basis review to assess this claim, the pertinent question

---

[6] Plaintiffs challenge Defendants' arbitrary and capricious policy that cuts off long-pending SIV applicants from the age-freezing benefits of Defendants' July 2022 processing change, as that policy has been applied to each of the Plaintiffs, their children, and H.K.  *See* Compl. ¶¶ 138–79. If the Court is concerned that Plaintiffs' as-applied challenge is barred by the doctrine of consular nonreviewability, Plaintiffs could amend their complaint to make a facial challenge to the policy— a final agency action that is far outside the purview of any consular officer's discretionary determination.  *See, e.g.*, *Sunny v. Biden*, 573 F. Supp. 3d 759, 771 (E.D.N.Y. 2021) (consular nonreviewability did not bar review of challenge to State Department policy); *Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1018–19 (N.D. Cal. 2019) (same where plaintiffs "challeng[ed] systemic practices" that did "not require review of an individual consular officer's decision."); *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 12 (D.D.C. 2017) (same where "Plaintiffs challenge[d] the State Department's policy").

is whether the "challenged classification . . . rationally further[s] some legitimate governmental interest." *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). The "rational-basis standard is 'not a toothless one.'" *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981) (quoting *Mathews v. Lucas*, 427 U.S. 495, 510 (1976)).

Defendants do not meet this standard. Their differential treatment is arbitrary, without a rational basis, and not justified by a legitimate government interest. Defendants contend the legitimate government interest at stake is "defining immigration benefit eligibility." Defs. Br. at 27. That is no answer to the equal protection claim, as it does not explain why, in defining immigrants' benefit eligibility, the challenged *classification* was made between similarly situated SIV applicants. *See Moreno*, 413 U.S. at 533 (ruling "the classification itself" must be "rationally related to a legitimate governmental interest").

Even where a policy serves a legitimate government purpose as a general matter, it violates the Constitution's equal protection guarantee if its implementation treats similarly situated persons differently without a rational basis. *See, e.g., Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336, 338, 346 (1989) (recognizing states' general interest in and power to collect taxes, but holding that implementation of a county's tax collection scheme resulted in "gross disparities in the assessed value of generally comparable property" in violation of equal protection rights). Take, for example, *Moreno*, in which the Supreme Court held that a food stamp program served a legitimate government interest in addressing hunger and malnutrition, but could not under rational basis review lawfully exclude "hippies" from receiving the program's benefits, as the challenged classification was unrelated to the law's purpose. 413 U.S. at 533–34. Or *City of Cleburne v. Cleburne Living Center*, in which the Supreme Court held that a city's zoning ordinance could not survive rational basis review where, even if it furthered the goal of reducing

street congestion and population concentration, it treated a home for persons with mental disabilities differently without justification. 473 U.S. 432, 450 (1985). So too here. Defendants cannot draw irrational classifications between similarly situated persons in defining "immigration benefit eligibility," even if, as a general matter, the government has an interest in defining eligibility. *See, e.g.*, *Williams v. Illinois*, 399 U.S. 235, 241–42 (1970) (recognizing government's legitimate interest in punishing people for crimes committed, but holding that Constitution's equal protection guarantee does not allow similarly situated persons to receive different periods of incarceration based on their ability to pay fines).

Defendants point to *R.V. v. Mnuchin*, 570 F. Supp. 3d 322, 336 (D. Md. 2021), *see* Defs. Br. at 27, 29, but this case does not further their argument. There, in determining eligibility for a credit under the Coronavirus Aid, Relief, and Economic Security Act, the government offered specific rationales for treating citizens whose parents had social security numbers (SSNs) differently from those who did not. *Id.* In particular, the government asserted that the SSN requirement helped to ensure recipients were authorized to work in the United States. *Id.* That Defendants offer no similar justification here for their differential classifications in determining eligibility for immigration benefits only speaks to the weakness of their argument.

Defendants assert that their process need not be the "best," Defs. Br. at 29, but the classification does need to be rational, and the cases they cite only further underscore the flaws in their argument. For example, in *Danbridge v. Williams*, the Supreme Court held that while a classification need not be "made with mathematical nicety," the "classification" needs to have "some reasonable basis." 397 U.S. 471, 485 (1970) (internal quotation omitted) (cited at Defs. Br. at 28). The Court described at length why the classification the state had drawn in its administration of public welfare benefits was well-reasoned and furthered the government's

interest in incentivizing gainful employment by allowing welfare recipients to retain money they earned without a reduction in their grant amount. *Id.* at 486. Similarly, in *Massachusetts Board of Retirees v. Murgia*, the Court explained that a state's mandatory retirement age of 50 for uniformed police officers was rational because "physical ability generally declines with age," and thus "mandatory retirement at 50 serves to remove from police service those whose fitness for uniformed work presumptively has diminished with age." 427 U.S. 307, 315 (1976) (cited at Defs. Br. at 28). Defendants offer no similar explanation here for their differential treatment of Plaintiffs' SIV applications. Thus, there is no basis, particularly at this stage of the case, to reject Plaintiffs M.O.K. and B.S.S.'s equal protection claims.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions to dismiss under Rule 12(b)(1) and 12(6)(6) and should decline to transfer venue.

Dated: October 1, 2024

Respectfully submitted,

*/s/ Edward J. Bennett*

| | |
|---|---|
| Linda Evarts (*admitted pro hac vice*) | Edward J. Bennett (VSB No. 40118) |
| INTERNATIONAL REFUGEE | John E. Joiner (*admitted pro hac vice*) |
| ASSISTANCE PROJECT | Ryan T. Scarborough (VSB No. 43170) |
| One Battery Park Plaza, 33rd Floor | Nicole E. Ratelle (*admitted pro hac vice*) |
| New York, NY 10004 | |
| Telephone: (516) 838-1655 | WILLIAMS & CONNOLLY LLP |
| Fax: (516) 324-2267 | 680 Maine Avenue SW |
| levarts@refugeerights.org | Washington, DC 20024 |
| | Telephone: (202) 434-5000 |
| | Fax: (202) 434-5029 |
| | ebennett@wc.com |
| | jjoiner@wc.com |
| | rscarborough@wc.com |
| | nratelle@wc.com |
| | |
| | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response in Opposition to Defendants'

Motion to Dismiss has been served upon counsel of record by filing the same using the Court's

CM/ECF system this 1st day of October 2024.

Dated: October 1, 2024

Respectfully submitted,

*/s/ Edward J. Bennett*

Linda Evarts (*admitted pro hac vice*)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, NY 10004
Telephone: (516) 838-1655
Fax: (516) 324-2267
levarts@refugeerights.org

Edward J. Bennett (VSB No. 40118)
John E. Joiner (*admitted pro hac vice*)
Ryan T. Scarborough (VSB No. 43170)
Nicole E. Ratelle (*admitted pro hac vice*)

WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Fax: (202) 434-5029
ebennett@wc.com
jjoiner@wc.com
rscarborough@wc.com
nratelle@wc.com

*Counsel for Plaintiffs*