# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| M.M.M., G.S., M.O.K., B.S.S., AND H.K.,     ) | |
| ) | |
| Plaintiffs,     ) | |
| ) | |
| v.     ) | Case No. 1:24cv1120 (MSN/IDD) |
| ) | |
| UNITED STATES DEPARMENT OF STATE     ) | |
| and UNITED STATES DEPARTMENT OF     ) | |
| HOMELAND SECURITY,     ) | |
| ) | |
| Defendants.     ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

## <u>INTRODUCTION</u>

Plaintiffs' Opposition confirms that many of the issues in this case are not in dispute.  This is a case in which Plaintiffs seek an order from this Court compelling the State Department ("DOS") to reconsider its preliminary determinations as to the visa eligibility of their children, citizens of Afghanistan who are currently abroad.  There is no dispute that Plaintiffs' children have not applied for the visas at issue.  There is also no dispute that there has been no determination by a consular officer as to any such application.

As a result of these undisputed facts, this Court should dismiss for lack of jurisdiction.  Plaintiffs lack standing to bring suit here, and the preliminary determinations of Plaintiffs' children's eligibility to receive an immigrant visa are not final agency actions under federal statute and State Department regulations, as required to authorize Article III judicial review under the Administrative Procedure Act ("APA").  Even if Plaintiffs could overcome these jurisdictional hurdles—that is, they have standing to pursue claims based on visa applications they have not executed, and can challenge anticipated visa adjudications which have not taken place—Plaintiffs' claims must be dismissed under the doctrine of consular non-reviewability.  Finally, Plaintiffs M.O.K. and B.S.S. fail to state a claim for an Equal Protection violation.  Plaintiffs' arguments in no way carry their heavy burden to show the application process here lacks any possible rational basis to the unquestionably legitimate government interest of defining who is eligible for immigration benefits. Accordingly, Plaintiffs have not pled cognizable claims for relief.

Thus, this Court should dismiss Plaintiffs' Complaint in its entirety.

## ARGUMENT

**I.     This Court Lacks Subject Matter Jurisdiction over the Claims Pled in Plaintiffs' Complaint.**

**A.     Plaintiffs Have Not Pled a Cognizable Injury to Satisfy Article III Standing.**

Plaintiffs argue they have suffered a cognizable injury to justify standing based on the State Department's handling of their family member's hypothetical visa applications, relying chiefly on this Court's decision and reasoning in *Berenjian v. Blinken*, 2024 WL 3732451, at *2 (E.D. Va. Aug. 8, 2024) (Nachmanoff, J.).  Pls'. Br. at 11-13.  Although Defendants respectfully continue to be of the view that *Berenjian* was wrongly decided, they understand that this Court rejected their argument, and thus re-assert it here primarily in order to preserve it for appellate review.

To establish Article III standing, Plaintiffs must show an (1) injury in fact that is (2) fairly traceable to Defendants' conduct and is (3) likely to be redressed by a favorable decision.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *accord Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).   A plaintiff "generally must assert [her] own legal rights and interest," except in the limited circumstances where she has "third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004).  Here, Plaintiff-parents are attempting to vindicate "the legal rights or interests of third parties," which Article III generally does not allow. *Warth v. Seldin*, 422 U.S. 490, 499 (2004).

Such a rationale for standing is especially improper here because Plaintiffs' children and Plaintiff H.K.—the actual parties who are allegedly aggrieved—do not possess any constitutional rights regarding entry into this country, and have not applied for visas in the first place.  *See* Defs'. Br. at 15-16 (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2341 (2018) ("foreign nationals seeking admission have no constitutional right to entry"); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)

("It is clear that Mandel personally, as an unadmitted and nonresident [non-citizen], had no constitutional right of entry to this country as a nonimmigrant or otherwise."); *Romero v. Consulate of U.S., Barranquilla, Colombia*, 860 F. Supp. 319, 323 & n.7 (E.D. Va. 1994) (holding that offshore non-citizens "have no standing to challenge the denial of their entry" and "no right to judicial enforcement of [the INA or its regulations] or to judicial review of administrative compliance with them")).  In this way, the instant case is distinguishable from *Berenjian*, in which the applicants (the plaintiff's fiancé and her daughter) *had applied* for visas, been refused, and the plaintiff challenged the State Department's purported delay in processing additional information and re-adjudicating the visa application.  *See Berenjian*, 2024 WL 3732451, at *2.  By contrast, here, there is no dispute that Plaintiffs are seeking redress for their children, who have not applied for visas and a consular officer has not adjudicated any such hypothetical applications.

In sum, Plaintiffs lack a judicially cognizable interest relating to the process of issuing or denying a visa to third party noncitizens abroad, who have not applied for visas in the first place. As such, Plaintiffs do nothing more than assert a non-cognizable injury, and  this Court should dismiss this action for lack of standing.

> **B.**     **The State Department's *Preliminary* Determinations on Plaintiffs' Eligibility as Derivative Children Are Not Final Agency Actions Because Only a Consular Officer May Determine Whether Plaintiffs Are Eligible for *Any* Immigrant Visas.**

Plaintiffs claim that the State Department's preliminary determinations as to Plaintiffs' eligibility to receive an immigrant visa constitute final agency action on any putative future immigrant visa application. Pls.' Br. at 13. As this Court will recall, whether an agency decision qualifies as a "final agency action" is governed by the Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154 (1997):

> First, the action must mark the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Id.* at 177-78.  Plaintiffs continue to fall short on both prongs.

1.      Plaintiffs contend that they can establish the first prong of the *Bennett* Test, because an "*initial* decisionmaker" determined that Plaintiffs' children were ineligible for an immigrant visa, and that this "initial" determination "*must* mark the consummation of the agency's decisionmaking process." Pls.' Br. at 14-15.  To support their view, Plaintiffs only cite to cases outside this Court or circuit. *See id*. Moreover, the cases Plaintiffs cite are not relevant to the relief Plaintiffs seek here—the issuance of immigrant visas.

        Plaintiffs first cite to *Farrell v. Tillerson*, which is a case involving whether a U.S. citizen properly renounced his U.S. citizenship. 315 F. Supp. 3d 47, 59-60 (D.D.C. 2018); *see* Pls.' Br. at 14. In *Farrell*, the plaintiff claimed that the informal denial of his request for a Certificate of Loss of Nationality violated the APA, and the court agreed that this was a final agency action. *Id.* at 52. This case is readily distinguishable from Plaintiffs' case. For instance, the letters in *Farrell*, which were submitted by plaintiff to the court as exhibits, were considered final agency action in part because they contained a detailed analysis of plaintiffs' eligibility. *See*, *e.g.*, *id.* at 57. Here, Plaintiffs fail to claim whether this type of analysis was ever conducted by those who preliminarily determined that Plaintiffs' children would be ineligible, by choosing not to attach the emails they received from the State Department. In fact, Plaintiffs do not even sufficiently allege *who* made those preliminary determinations, other than that it was someone within the State Department or National Visa Center. *See, e.g.*, Compl. ¶ 70. To be clear, only a consular officer has the authority

to determine whether an applicant is eligible for an immigrant visa. *See* 8 U.S.C. §§ 1101(a)(9); (a)(16), 1201(a)(1); 22 C.F.R. § 42.71(a); *see also* Dfs'. Br. at 3-4.

Plaintiffs also cite to *Hernandez Castro v. Mayorkas*, 2022 WL 10856892, at *5 (E.D. Wash. Apr. 11, 2022), where a doctor's determination that plaintiffs did not meet the COVID-19 vaccine requirements in the visa application process constituted a final agency action. *Id.*; *see* Pls.' Br. at 14-15. But this case provides Plaintiffs no help: Plaintiffs fail to note that the plaintiff in *Hernandez Castro* did in fact execute an immigrant visa application in front of a consular officer. *See* 2022 WL 1085682, at *2 ("plaintiff's immigrant visa was denied on two grounds . . . after his visa denial, Mr. Hernandez Castro obtained the COVID-19 vaccination"). That is unlike here, where it is undisputed that Plaintiffs have not executed immigrant visa applications in front of a consular officer. *See* Dfs'. Brief at 19-20.

More fundamentally, in determining whether "the action [] mark[s] the consummation of the agency's decisionmaking process," 520 U.S. at 177-78, courts must look at "the statutes and regulations that govern the agency action at issue to determine whether it is final." *Jake's Fireworks Inc. v. U.S. Consumer Product Safety Commission*, 105 F.4th 627, 631 (4th Cir. 2024). "Actions that are informal, tentative, or by a *subordinate official* ordinarily do not conclude an agency's decisionmaking process." *Id.* (emphasis added).[1]

The Immigration and Nationality Act ("INA") and its implementing regulations make clear that the *only* person who can make a decision as to whether a noncitizen may be issued an

---

[1] Plaintiffs claim in one paragraph that Defendants "cannot make any meaningful comparison between Plaintiffs' circumstances and the cases Defendants cite." Pls.' Br. at 15. To support this contention, Plaintiffs explain the factual differences between their case and one other case, *Jake's Fireworks*. *Id.* at 15-16. Defendants note that they cite to *Jake's Fireworks* because the rule it sets out on the first *Bennett* prong is binding Fourth Circuit precedent.

immigrant visa is a consular officer. *See* 8 U.S.C. §§ 1101(a)(9); (a)(16), 1201(a)(1); 22 C.F.R. § 42.71(a); *see also* Dfs'. Br. at 3-4, 18-19. Moreover, Plaintiffs "shall be required to appear personally before a consular officer[.]" 22 C.F.R. § 42.62(a); *see also id.* § 42.62(b). Plaintiffs attempt to construe the State Department's preliminary determinations as final agency actions by vaguely alleging that Plaintiffs' children were never allowed to interview with a consular officer. *See* Pls.' Br. at 13-17. Plaintiffs are permitted to execute visa applications and the adjudicating consular officer at the time of interview will determine whether they are eligible for a visa. But without an interview, they cannot not make and execute a visa application before a consular officer and consequently, cannot get a decision on that application. *See id.* §§ 42.62(a), (b).

2.       As to the second prong of the *Bennett* test, Plaintiffs seem to confuse the second prong with the first. *See* Pls.' Br. at 16-17. Specifically, Plaintiffs state "[a]s for the second prong, the law is clear[,]" and quote to a case outside this circuit that explains "[a] decision to take no further action on, and in effect, to conclude consideration of, pending applications constitutes final agency action." Pls'. Br. at 16 (quoting *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 11 (D.D.C. 2011), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012)).

To satisfy the second prong of the *Bennett* test, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. at 177-78. The Fourth Circuit clarified that "agency action which carries no 'direct and appreciable legal consequences' is not reviewable under the APA." *Flue-Cured Tobacco Coop. Stabilization Corp. v. Environmental Protection Agency*, 313 F.3d 852, 859 (4th Cir. 2002) (citing Bennett, 520 U.S. at 178). And "the agency must have made up its mind, and its decision must have inflicted an

actual, concrete injury upon the party seeking judicial review." *Golden & Zimmerman*, at 711 (quoting *Am. Tel. & Tel. Co. v. E.E.O.C.*, 270 F.3d 973, 975 (D.C. Cir. 2001)).[2]

In no way do Plaintiffs explain or even mention what "rights or obligations" are at issue or *any* legal consequences that stem from the State Department's preliminary determinations. Instead, Plaintiffs contend "the Defendant agencies here [do] not need to take any additional steps for their decision-making to impact Plaintiffs." Pls. Br. at 17. Plaintiffs' argument cannot overcome the clear statutory authority that only a consular officer decides whether or not to issue an immigrant visa. *See* 8 U.S.C. §§ 1101(a)(9); (a)(16), 1201(a)(1); 22 C.F.R. § 42.71(a); *see also* Dfs'. Br. at 3-4. As such, there are no possible legal consequences stemming from the State Department's preliminary determinations. *See* Dfs'. Br. at 21.

Therefore, the State Department's preliminary determination that Plaintiffs' children and H.K. would be ineligible to receive a special immigrant visa as derivative children is not a final agency action, and this Court should thus dismiss Plaintiffs' APA claim.

## II.     Plaintiffs' Claims Alternatively Fail to State a Plausible Claim.

### A.     The Doctrine of Consular Non-Reviewability Precludes Plaintiffs' Claims.

In their Opposition, Plaintiffs attempt an age-old argument – "heads I win, tails you lose" – in arguing that the doctrine of consular non-reviewability is inapplicable here because "there is no determination" by a consular officer on a visa application.  *See* Pls'. Br. at 17-19.  Indeed, there is no dispute that there have been no visa applications, and no consular officer decisions on visa

---

[2] Plaintiffs argue that Defendants "rely on inapplicable authority" regarding the second *Bennett* prong and simply cite to Defendants' cases with a parenthetical explaining the facts of those cases. *See* Pls.' Br. at 16-17. This is incorrect. While Defendants rely on some cases outside this Court and circuit, the Defendants primarily rely on cases *within* the District Court for the Eastern District of Virginia and circuit. *See* Dfs'. Br. at 21 (citing *Flued-Cured Tobacco*, 313 F.3d at 859 (4th Cir.), and *Golden & Zimmerman, LCC v. Domenech*, 599 F. Supp. 2d 702, 710 (E.D. Va. Feb. 27, 2009).

applications, for the Plaintiffs' children here.  And for that reason, Defendants' primary argument is that there has been no final agency action for this Court to review.  *See* Defs.' Br. at 16-21; *supra* Part I.B.  However, if the Court concludes that the preliminary determinations challenged in this case are akin to final agency action and that decisions to deny visas to Plaintiffs' children have been made, then the doctrine of consular non-reviewability applies to bar this Court's review of those decisions.  *See* Defs'. Br. at 22-24.

The doctrine of consular non-reviewability "instructs that ordinarily it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given [noncitizen]."  *Sesay v. U.S.*, 984 F.3d 312, 315 (4th Cir. 2021) (quotation omitted); *see also Department of State v. Muñoz*, 144 S. Ct. 1812 (June 21, 2024) ("Congress may delegate to executive officials the discretionary authority to admit noncitizens immune from judicial inquiry or interference. When it does so, the action of an executive officer to admit or to exclude an alien is final and conclusive.") (citation and internal quotation marks omitted); *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (internal quotation marks omitted). The preclusion of judicial review over decisions on entry undoubtably extends beyond visa decisions made by consular officers.

Second, although Plaintiffs cite several out-of-circuit cases in support of their proposition that the preliminary determinations as to Plaintiffs' children's visa eligibility are not barred from judicial review, all are distinguishable from the instant case because they involve materially different benefit applications, or purported delays/suspension of adjudication of visa applications altogether. *See* Pls'. Br. at 19 (citing *Allen v. Milas*, 896 F.3d 1094, 1100 (9th Cir. 2018)

(acknowledging *Patel v. Reno*, which permitted challenge where consular officer "has failed to act at all"); *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (permitting challenge to suspension of visa applications); *Maramjaya v. U.S. Citizenship & Immigr. Servs.*, No. 1:06-CV-2158 (RCL), 2008 WL 9398947, at *4 (D.D.C. Mar. 26, 2008) (challenge to DHS decision); *Coniglio v. Garland*, 556 F. Supp. 3d 187, 199–202 (E.D.N.Y. 2021) (same); and *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 418 (S.D.N.Y. 2006) (same)).

. With Plaintiffs' Opposition, it is clear they seek to construe the Department's preliminary determinations as to visa eligibility as final, and then bring the merits of that "determination" to this Court. This is what the doctrine of consular non-reviewability precludes. *Sesay*, 984 F.3d at 316 ("It is well settled that this power is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers. While these crucial principles may not be readily apparent or implicated in any particular visa determination, their cumulative importance to the conduct of foreign policy and exercise of diplomatic relations is large."). Therefore, if the Court finds that the preliminary determinations at issue here are akin to final agency action denying an immigrant visa to the Plaintiffs' children, the Court should dismiss these claims as barred by the doctrine of consular non-reviewability.

**B.     Plaintiffs M.O.K. and B.S.S.'s Equal Protection Clause Challenge Fails.**

Plaintiffs M.O.K. and B.S.S. argue that the visa application process under which their children had become too old to be included in their applications violates their Equal Protection rights under the federal Constitution.  In their Opposition, Plaintiffs make clear that this claim hinges on the argument that the State Department has drawn an irrational classification between "similarly situated persons in defining immigration benefit eligibility."  Pls'. Br. at 22.  This argument fails.

As a threshold matter, Plaintiffs claim "Defendants created a new policy for determining the ages of SIV derivative children." Pls'. Br. at 5. This is incorrect. As explained in Defendants' opening memorandum, the State Department created a new *prospective process* for petitioning for a Special Immigrant Visa. Defs'. Br. at 6-7, 27. There has been no change to the definition of "child" in the INA, or CSPA, which continues to govern statutory age calculations for derivative children, including SIV derivatives. *See* AAPA, § 602(b)(2)(B) (including the spouse and "children" of a "principal alien"); 8 U.S.C. § 1101(b)(1) (defining "child"); 8 U.S.C. § 1153(h)(1) (subtracting from an applicant's age on the date of visa availability the amount of time the applicable petition was pending with the government only if the applicant sought to acquire lawful permanent residence status within one year of visa availability). Rather, the State Department created a new prospective process by which individuals could petition for an SIV, which did not apply to individuals who had previously filed SIV petitions, so that individuals would not have filed two separate petitions, one under the new process and one under the old process. Defs'. Br. at 6-7, 27-29.

Given the two different petition processes, it is clear that the Plaintiffs are not similarly situated to individuals who had not yet filed petitions in July 2022, when the petition process changed. Plaintiffs here were not excluded from the new process; rather, the process changed after they filed their petitions. All of the Plaintiffs' children were over 21 at the time they filed the I-360 Petition. Defs'. Br. at 6-7. It was only after the process changed in July 2022 that Plaintiffs could attempt to bring any claim about differential treatment. Accepting Plaintiffs' claim, a change in immigration or government benefits eligibility necessarily fails rational basis scrutiny if the change does not also apply retroactively. Such a rule has no basis in Equal Protection law, and would disincentivize an agency from ever modifying or improving a process prospectively.

As explained in Defendants' opening memorandum, by establishing a revised process, the State Department streamlined the way by which individuals petitioned to be classified as a special immigrant for those applicants who had not already filed a petition.  As a result, the State Department limited the streamlined application process to certain individuals.  The Supreme Court has accepted this conception of Congress's legitimate interest in limiting the extension of immigration benefits in another immigration-related rational basis context.  *See Mathews v. Diaz*, 426 U.S. 67, 83-84 (1976) (holding that the "task of classifying persons for benefits . . . inevitably require that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line.  When this brand of policy choice must be made, we are especially reluctant to question the exercise of congressional judgment").

Accordingly, the State Department's new petitioning process easily withstands rational basis scrutiny, and Plaintiffs M.O.K. and B.S.S. fail to state a claim for an Equal Protection clause violation.

## III.   This Court Should Transfer This Case to the United States District Court for the District of Columbia.

The Court should transfer this case to the U.S. District Court for the District of Columbia, which is a more appropriate judicial forum given the allegations and parties in the case. *See* 28 U.S.C. § 1404(a) ("in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"); 28 U.S.C. § 1391(e)(1) ("A civil action in which a defendant is . . . any agency of the United States . . . may . . . be brought in any judicial district in which (A) a defendant in the action resides, [or] (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides[.]"); Defs'.

Br. at 10-14.[3]  The Court has broad discretion to determine whether transfer there is appropriate, and in doing so considers the following factors: "1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).  As explained in Defendants' opening memorandum, each factor weighs in favor of transfer.  *See* Defs'. Br. at 11-14.

Plaintiffs argue that transfer is not appropriate, but in doing so, make no claim about any connection between this litigation and the Eastern District of Virginia save the current residence of a single Plaintiff.  *See* Pls'. Br. at 7-10.  By contrast, the U.S. District Court for the District of Columbia has a connection to the underlying facts, claims, and issues in the case. *See* Defs.' Br. at 11-12.  Indeed, although Plaintiffs attempt to distance the instant case from it, Plaintiffs themselves cite to the pending class action concerning the processing of Afghan visas already pending in that district.  *See* Pls'. Br. at 10, 12 (citing *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-01388 (TSC) (D.D.C.)).

Plaintiffs also argue that their choice of venue is entitled to deference.  However, although a plaintiff's selection of his or her home forum is "entitled to substantial deference, [it] is not controlling." *Board of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating and Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D. Va. 1988).  And the weight of a plaintiff's

---

[3] Plaintiffs are correct that Defendants mistakenly omitted a reference to 28 U.S.C. § 1404 in their cover motion.  *See* Dkt. 28-29; Pls'. Br. at 8.  Undersigned counsel regrets the inadvertent error.  However, undersigned counsel met and conferred telephonically with counsel for Plaintiffs about the motion to transfer and cited relevant case law and statutory provisions in Defendants' opening memorandum.  As such, Defendants' position is that the error is harmless and asks the Court to consider Defendants' transfer argument; especially given that Defendants could, in any event, reassert the argument in a separately filed motion at any time.

choice is reduced where there is no nexus between the plaintiff's home district and the cause of action. *Id*. As set out in Defendants' opening memorandum, the Eastern District of Virginia has no substantive nexus to the underlying litigation: the defendant agencies are headquartered in Washington, D.C.; the Complaint challenges the preliminary consideration of eligibility for an immigration benefit as to five different Plaintiffs, all but one of whom reside outside of this District, *see* Dkt. 1 ¶ 11-12; and the sole resident Plaintiff has no allegations regarding any conduct within this District. Accordingly, this Court should exercise its discretion to transfer this case to the District of Columbia.

## **CONCLUSION**

For all these reasons, Defendants respectfully request that this Court grant their motion to dismiss.

Dated: October 10, 2024

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

*By*: _____/s/_____
ELIZABETH A. SPAVINS
Assistant United States Attorney
CHRISTIAN J. COOPER
Special Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3785/3831
Fax:    (703) 299-3983
Email: Lizzie.Spavins@usdoj.gov
Christian.Cooper@usdoj.gov
*Counsel for Defendants*

13